[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11967
Non-Argument Calendar

_____

D. C. Docket No. 06-00187-CR-ORL-31-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE JERALD BROOKS,
a.k.a. Rod,
CHARLES CLARENCE BROOKS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 21, 2008)

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Charles Brooks appeals his convictions and sentences for: (1) conspiracy to possess with intent to distribute 50 grams or more of crack cocaine (Count I); (2) possession with intent to distribute crack cocaine on January 13, 2006 (Count IV); and (3) possession with intent to distribute 5 grams or more of crack cocaine on January 24, 2006 (Count V). Charles's son, Eddie Brooks, appeals his convictions and sentences for: (1) conspiracy to possess with intent to distribute 50 grams or more of crack cocaine (Count I); (2) possession with intent to distribute crack cocaine on January 13, 2006 (Count IV); and (3) possession with intent to distribute crack cocaine on February 3, 2006 (Count VII). Charles and Eddie each assert three issues on appeal, and Eddie adopts Charles's issues. We address each of the issues on appeal in turn, and affirm their convictions and sentences.

I.

Both Charles and Eddie assert the district court abused its discretion by not granting Charles's motions to sever. Charles contends the district court erred by not granting his motions for relief from prejudicial joinder. According to Charles, the district court admitted several pieces of evidence, admissible against Eddie, that did not necessarily relate to Charles and that were highly prejudicial, including Eddie's testimony regarding the firearms that were found in Eddie's and Charles's

2

Mathers Street house prior to the start of the conspiracy. Finally, Charles contends the jury's split verdict demonstrates its lack of confidence in the evidence. Eddie adopted this argument in his brief.

"We review a district court's ruling on a severance motion only for abuse of discretion." *United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 3004 (2007). In order "[t]o reverse a conviction because of an improper denial of a severance, a defendant must carry the 'heavy burden' of demonstrating that he 'suffered compelling prejudice' and received an unfair trial." *Id.* at 858-59.

"The permissibility of joint trials is governed by Rules 8 and 14 of the Federal Rules of Criminal Procedure." *United States v. Blankenship*, 382 F.3d 1110, 1120 (11th Cir. 2004). Pursuant to Rule 8(b):

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court *may* order separate trials of

3

counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a) (emphasis added).

In general, defendants who are jointly indicted, particularly in conspiracy cases, should be tried together. *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005). However, "[s]everance may be granted at the discretion of the district court if the court determines that prejudice will result from the joinder." *Id.* "[A] district court must balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice." *Id.*

In *Zafiro v. United States*, 113 S. Ct. 933 (1993), the Supreme Court established a two-part test for determining whether the defendant is entitled to a new trial. *Blankenship*, 382 F.3d at 1122. "First, a defendant must demonstrate that he was somehow prejudiced by a joint trial." *Id.* "This is done by showing that the jury was unable to make an individualized guilt determination for each defendant." *United States v. Francis*, 131 F.3d 1452, 1459 (11th Cir. 1997). "'This is a heavy burden, and one which mere conclusory allegations cannot carry.'" *Id.* (citation omitted). "'[C]autionary instructions to the jury to consider the evidence separately are presumed to guard adequately against prejudice.'" *Id.* (citation omitted). Importantly, "a defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his

4

codefendants,' . . . even when the disparity is 'enormous.'" *Baker*, 432 F.3d at 1236 (citations omitted). "After finding that a defendant has suffered prejudice under step one of the *Zafiro* test, we then turn to the second step–determining whether severance . . . is the proper remedy for that prejudice." *Blankenship*, 382 F.3d at 1122.

The district court did not abuse its discretion by denying Charles's and Eddie's motions to sever. Both Charles and Eddie were jointly indicted for the same conspiracy. Because a joint trial is generally appropriate in such a case, Charles and Eddie bore the "heavy burden" of demonstrating that severance was nonetheless appropriate because he "suffered compelling prejudice and received an unfair trial." *See Kennard*, 472 F.3d at 858-59; *Baker*, 432 F.3d at 1236. Charles claims a significant portion of the evidence presented by the Government was highly prejudicial and mainly implicated Eddie and not him. However, Charles cannot demonstrate compelling prejudice by claiming the evidence used at trial was only applicable against Eddie. *See Baker*, 432 F.3d at 1236. Further, the bulk of the evidence to which Charles complains was relevant and admissible against him to demonstrate the existence and scope of the conspiracy and prove the firearm charges in Count VIII of the indictment.

Charles also contends he was prejudiced by Eddie's testimony, as well as the Government's rebuttal evidence, which concerned weapons found in the Mathers Street house prior to the conspiracy's start date. However, Charles has not shown he suffered compelling prejudice with regard to that evidence because the jury acquitted Charles of the charge relating to the firearms. *See Francis*, 131 F.3d at 1459. In addition, although Eddie adopted this argument in his brief, his wholesale adoption of these arguments, many of which were particular to Charles, fails to meet Eddie's burden of demonstrating that he too suffered compelling prejudice and received an unfair trial. Thus, because neither Charles nor Eddie has demonstrated they suffered compelling prejudice, they have failed to pass the first step of the *Zafiro* test, and we need not go to the second step. *See Blankenship*, 382 F.3d at 1122. Consequently, the district court did not abuse its discretion.

II.

Charles next argues the cumulative effect of the district court's evidentiary errors and the denial of his motions to sever rendered his trial fundamentally unfair. Charles asserts he was prejudiced by the admission of several pieces of evidence and testimony, and he also contends the district court erred when it allowed the expert testimony of DEA Agent Baer. Charles contends although the confidential informant "Lloyd" never mentioned that he purchased crack cocaine

6

from Charles or Eddie prior to November 2005, Lloyd did testify that he purchased the crack cocaine from "Eau Gallie," and he testified that "Eau Gallie" was the home of both Charles and Eddie.  In addition, according to Charles, coconspirator Jasper Riles "gave the impression" that he purchased crack cocaine from Charles prior to November 2005, even though he never mentioned a specific time period. Eddie adopted this argument in his brief.

A district court's evidentiary rulings are reviewed for abuse of discretion. *Baker*, 432 F.3d at 1202.  In addition, "[w]e review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion."  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004). "The cumulative impact of multiple evidentiary and instructional errors are reviewed *de novo*, although some of the errors might individually be reviewed for plain error."  *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007).

As discussed above, the district court did not abuse its discretion by failing to grant either Charles's or Eddie's motions to sever.  Aside from Agent Baer's expert testimony, Charles complains of two categories of evidence that he claims were improperly admitted: (1) evidence that crack cocaine and weapons were being sold at the Mathers Street house during the course of the conspiracy; and

7

(2) evidence that crack cocaine and weapons were being sold at the Mathers Street house prior to the start of the conspiracy. Because, as discussed below, we conclude the district court did not abuse its discretion by admitting the evidence about which Charles complains, we also conclude there was no cumulative error that rendered Charles's or Eddie's trial fundamentally unfair.

*A.* *Evidentiary rulings*

Rule 404(b) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

> For evidence of other crimes or acts to be admissible under Rule 404(b), (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

> But evidence of criminal activity other than the charged offense is *not* extrinsic under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

8

*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotations omitted). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998).

1. *Evidence of Crack Cocaine and Firearm Transactions During the Course of the Conspiracy*

The indictment alleged that beginning "on or about November 18, 2005, and continuing through on or about February 3, 2006," Charles and Eddie conspired with Riles to distribute and possess crack cocaine. The indictment also charged that both Eddie and Charles possessed a firearm in furtherance of the conspiracy charges in Count I. Thus, the evidence that Charles identifies in his brief concerning drug and firearm transactions that occurred during the course of the conspiracy was not "[e]vidence of other crimes, wrongs, or acts," and the district court did not abuse its discretion in admitting the evidence.

2. *Evidence of Crack Cocaine and Firearm Transactions Prior to the Start of the Conspiracy*

The district court did not abuse its discretion by admitting Lloyd's testimony regarding purchasing drugs from "Eau Gallie," which he identified as Eddie and

9

Charles's home during 2004 and 2005. Lloyd's testimony was not extrinsic to either Eddie or Charles because it was necessary to complete the story of the crime, the testimony was probative to establish Lloyd's history of purchasing drugs, and the testimony was not substantially outweighed by the danger of unfair prejudice. *See Edouard*, 485 F.3d at 1344.

The district court also did not abuse its discretion by admitting Lloyd's testimony regarding purchasing firearms from Charles and having been in Charles's bedroom on prior occasions for the purpose of obtaining firearms and cocaine. Lloyd's testimony was not extrinsic evidence because it was both necessary to complete the story of the crime and inextricably intertwined with the evidence regarding the conspiracy and the firearm charges that occurred during the course of the conspiracy. *See id.*

Further, the district court did not abuse its discretion by admitting Riles's testimony regarding obtaining crack cocaine from Charles prior to the conspiracy's start date because (1) Charles placed his intent at issue, (2) Charles failed to present any evidence to rebut Riles's testimony, and, therefore, a jury could have found by a preponderance of the evidence that he committed the extrinsic act, and (3) the probative value of the evidence was not substantially outweighed by undue prejudice. *See Zapata*, 139 F.3d at 1358.

10

*B.*     *Expert testimony*

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "'The operations of narcotics dealers are a proper subject for expert testimony under Rule 702.'" *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (citation omitted). Further, we have "recognized the 'well-established' 'rule' that 'an experienced narcotics agent' may testify as an expert to help a jury understand 'the significance of certain conduct or methods of operation unique to the drug distribution business.'" *Id.* (citation omitted). Moreover, we have "affirmed the admission under Rule 702 of the expert testimony of a police officer interpreting 'drug codes and jargon.'" *Id.* (citations omitted).

The district court did not abuse its discretion by permitting Agent Baer to testify as an expert witness. Agent Baer was an "experienced narcotics agent," and his testimony could have helped the jury understand the evidence. Further, Agent Baer's testimony was probative because it was the type of testimony that could

11

help the jury understand "the significance of certain conduct or methods of operation unique to the drug distribution business." *See id.*

## III.

Charles's final argument is that mandatory minimum sentences are unconstitutional when they provide for exceptions that can only be applied by motion from the executive branch. Therefore, Charles contends 21 U.S.C. § 841 is unconstitutional and violates the doctrine of separation of powers. Charles states he is "[c]ognizant of current precedent contrary to his position," but wishes to preserve the issue for further review. Eddie adopted this issue in his brief.

In *United States v. Holmes*, we held that statutory mandatory minimum sentences do not violate the separation of powers doctrine, stating "[i]t is for Congress to say what shall be a crime and how that crime shall be punished." 838 F.2d 1175, 1178 (11th Cir. 1988) (citation omitted). In light of our binding precedent, this argument is without merit.

## IV.

Eddie asserts the district court erred by failing to grant his motion for judgment of acquittal for the conspiracy charge in Count I because the Government's evidence showed only that there was cocaine in the house that was occupied at various time by Eddie and others. According to Eddie, in order for the

12

jury to have concluded that there was a conspiracy among him and the other defendants, the jury must have assumed facts that were not in evidence.

We review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds. *United States v. Yates*, 438 F.3d 1307, 1311-12 (11th Cir. 2006) (en banc). In considering the sufficiency of the evidence, we view all of the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." *United States v. LeCroy*, 441 F.3d 914, 924 (11th Cir. 2006). We "cannot reverse a conviction for insufficiency of the evidence unless . . . we conclude that no reasonable jury could find proof beyond a reasonable doubt." *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990). In addition, at least where some corroborative evidence of guilt exists for the charged offense, "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original). "To be more specific, we have said that, when a defendant chooses to testify, he runs the risk that if disbelieved 'the jury might conclude the opposite of his testimony is true.'" *Id.* (citation omitted).

To support a conviction for conspiracy to distribute crack cocaine, the government must establish (1) an illegal agreement existed to possess with the

13

intent to distribute crack cocaine, (2) the defendant knew of the agreement; and (3) the defendant knowingly and voluntarily joined in the agreement. *See United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002). Further, "[b]ecause the crime of conspiracy is 'predominantly mental in composition,' it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (citations omitted).

Viewing the evidence in the light most favorable to the Government, the jury's determination that Eddie was guilty of conspiracy to possess with intent to distribute crack cocaine is supported by the evidence. The jury reasonably could have found that a conspiracy to sell crack cocaine from the Mathers Street house existed among Charles, Eddie, and Riles because Riles testified he obtained crack cocaine from Charles at the Mathers Street house, and, on three or four occasions, Riles sold crack cocaine out of the house on Charles's behalf. Riles also testified that others came to the Mathers Street house to buy crack cocaine from Charles. Eddie participated in conspiracy because: (1) Lloyd bought crack cocaine from Eddie on at least three separate occasions; (2) Lloyd bought crack cocaine from both Eddie and Charles on two occasions; and (3) Riles acted as a lookout for Eddie during the February 3, 2006 transaction. Riles also testified he observed Eddie "cooking" cocaine at the Mathers Street house "a few times." Det.

14

Mercaldo's testimony that he observed numerous people, including local prostitutes, frequent the Mathers Street house, corroborated Lloyd's and Riles's testimony that the house was being used by Eddie, Charles, and Riles to sell crack cocaine. Although Eddie testified he did not live at the Mathers Street house, and he denied ever having cooked or sold crack cocaine, the jury was free to disbelieve him and consider his testimony as substantive evidence of his guilt. *See Brown*, 53 F.3d at 314. Thus, based on the evidence presented, a jury could have reasonably inferred that: (1) an illegal agreement existed to possess with intent to distribute crack cocaine: (2) Eddie knew of the agreement; and (3) Eddie knowingly and voluntarily joined in the agreement. *See Charles*, 313 F.3d at 1284. Therefore, the district court did not err by failing to grant Eddie's motion for judgment of acquittal.

## V.

Eddie contends the district court erred by holding him responsible for 50 grams or more of crack cocaine because the evidence showed he was responsible for only 35 to 50 grams of crack cocaine.[1]

---

[1] After the briefs were filed, Eddie filed a letter of supplemental authority, pursuant to Fed. R. App. P. 28(j). According to Eddie, application of the changes contained in Amendment 706 of the 2007 version of the Guidelines results in a two-level reduction of his base offense level. Although Eddie might be eligible for a reduction of his base offense level, this issue is not before us on this appeal as the district court has made no decision on whether Eddie is or is not entitled to a reduction.

We review a sentencing court's application of the Sentencing Guidelines *de novo*. *United States v. Edmonds*, 348 F.3d 950, 952-53 (11th Cir. 2003). We review a district court's drug-quantity determination for clear error. *United States v. Mertilus*, 111 F.3d 870, 873 (11th Cir. 1997).

Eddie's assertion he is responsible for less than 50 grams of crack cocaine is without merit. The Government presented evidence at trial that Eddie was responsible for more than 50 grams of cocaine, including testimony from persons who bought crack cocaine, the crack cocaine itself, tape recordings of drug sales, and expert testimony establishing the nature and weight of the crack cocaine. As part of its verdict determination, the jury specifically found beyond a reasonable doubt that 50 grams or more of crack cocaine were involved in the conspiracy offense for which they found Eddie guilty. Thus, the district court did not clearly err in finding him responsible for more than 50 grams of crack cocaine for purposes of sentencing.

VI.

Finally, Eddie contends the district court erred by enhancing his sentence under U.S.S.G. § 2D1.1(b)(1) because the jury acquitted him of the 18 U.S.C. § 924(c)(1) charges contained in Counts VIII and IX.

16

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999). "Possession of a firearm for sentencing purposes is a factual finding." *United States v. Geffrard*, 87 F.3d 448, 452 (11th Cir. 1996).

A defendant's offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). "The government has the burden under § 2D1.1 to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). The government need not prove that the firearm was used to facilitate the distribution of drugs. *Id.* "If the government is successful, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" *Id.* "Relevant conduct of which a defendant was acquitted . . . may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by

17

a preponderance of the evidence." *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997).

Eddie's argument the firearm enhancement is inapplicable because the jury acquitted him of the § 924(c) charges is without merit. The Government was only required to demonstrate by a preponderance of the evidence that the firearm was present during the drug transaction. *See Audain*, 254 F.3d at 1289. Lloyd testified at trial that Eddie usually carried a gun in his pocket, and he believed Eddie was carrying a gun in his front pocket during the February 3, 2006, transaction because Lloyd saw a bulge in Eddie's front pocket. Lloyd made a controlled purchase of crack cocaine from Eddie that day using $1,900 worth of bills that were provided by Det. Mercaldo. Det. Mercaldo testified the bills were photocopied prior to the transaction. Eddie was arrested shortly after the transaction, and he was found with a loaded firearm in his pocket and $1,900 worth of bills in his hand. According to Det. Mercaldo, the serial numbers from the bills Eddie was holding matched those in the photocopies. Thus, because the Government met its burden of showing by a preponderance of the evidence a sufficient nexus between the loaded firearm and the February 3, 2006, drug transaction, Eddie was required to demonstrate that a connection between the weapon and the offense was clearly improbable. *See id.* Eddie failed to meet his burden. Moreover, even though

18

Eddie was acquitted of the § 924(c)(1) charges in Counts VIII and IX, his conduct with regard to the firearm found in his possession that day was relevant for purposes of sentencing.  *See Barakat*, 130 F.3d at 1452.  Therefore, the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement.

VII.

The district court did not abuse its discretion by denying the motions to sever because neither Charles nor Eddie demonstrated they suffered compelling prejudice from the joint trial.  Second, neither Charles nor Eddie was entitled to a new trial because the cumulative effect of evidentiary errors and the denial of the motions to sever did not render the trial fundamentally unfair.  Third, this Court's binding precedent precludes Charles's and Eddie's argument that the mandatory minimum provisions of 21 U.S.C. § 841 are unconstitutional on the ground the provisions violate the doctrine of separation of powers.

Additionally, there was sufficient evidence to support Eddie's conviction for conspiracy because a reasonable jury could have concluded beyond a reasonable doubt that:  (1) an illegal agreement existed to possess with intent to distribute crack cocaine; (2) Eddie knew of it; and (3) Eddie knowingly and voluntarily joined the agreement.  Next, the district court did not clearly err in holding Eddie responsible for 50 grams of crack cocaine because the jury specifically found that

50 grams or more of crack cocaine were involved in the conspiracy offense for which Eddie was convicted. Third, the district court did not clearly err in its application of the § 2D1.1(b)(1) firearm enhancement, because Eddie did not meet his burden of showing that a connection between the firearm he possessed at the time of his arrest and the drug trafficking offense was clearly improbable. Accordingly, we affirm Charles's and Eddie's convictions and sentences.

**AFFIRMED.**