[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15683
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-20402-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRENDA DARLING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2010)

Before CARNES, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Brenda Darling, a former bank manager, appeals her convictions and 21-

month sentence imposed for her participation in a scheme to cash fraudulently endorsed United States Treasury checks. On appeal, Darling claims that her convictions must be reversed because the evidence presented at trial was insufficient and because the district court's evidentiary errors, either alone or in combination, denied her a fair trial. Darling also challenges her sentence, arguing that the district court improperly applied guideline enhancements based on the amount of loss and abuse of a position of trust, and failed to grant her a reduction for a minor role. Finally, Darling claims that her 21-month sentence, which was at the bottom of her guideline range, is substantively unreasonable because the district court denied her request for a downward variance. After review, we hold that Darling's convictions are supported by the evidence, the district court's evidentiary rulings were either correct or harmless, and her sentence is reasonable. Accordingly, we affirm.

I.

Darling was a branch manager at the Homestead Florida branch of the Community Bank of Florida. In May 2009, Darling and two co-conspirators, Carmen Hawkins and Yolanda Edward, were indicted on charges that they conspired to defraud the United States by fraudulently endorsing and passing United States Treasury checks, in violation of 18 U.S.C. §§ 371 and 510(a). The

indictment also charged Darling, Hawkins, and Edward with eleven counts of knowingly and fraudulently passing Treasury checks bearing false and forged endorsements, in violation of 18 U.S.C. § 510(a)(2), and eleven counts of knowingly receiving , delivering or retaining stolen Treasury checks bearing forged endorsements, in violation of 18 U.S.C. § 510(b).  Hawkins and Edward pleaded guilty to the conspiracy charge, and the remaining charges against them were dismissed.  Darling proceeded to trial.

At trial, the government presented testimony from current and former bank employees about Darling's involvement with the fraudulently endorsed Treasury checks and the bank's subsequent investigation.  First, a former teller, Tanesha Reid, testified that Hawkins came to the bank drive-through and asked to see Darling.  When Reid brought Darling to the window, Hawkins sent three Treasury checks to Darling through the "tube" into the bank to be cashed.  She explained that bank policy only allowed tellers to cash checks made out to people with accounts at the bank, or checks drawn on accounts at the bank, if the person cashing the check presented valid identification matching the name on the check. Reid pointed out to Darling that Hawkins had not presented any identification as bank policy required, but Darling waived the identification requirement under her authority as a bank manager, initialed the checks, and approved the transaction.

3

Reid then cashed the three checks, sending a total of $16,384.56 to Hawkins.[1]

Reid recalled that she was concerned that she would be held responsible for the transaction because none of the payees had accounts at the bank and no identification had been produced. She also testified that she was concerned that the transaction would require the bank to prepare and submit a currency transaction report ("CTR") because the total amount of the transaction exceeded $10,000, and that she would need the payees' identification to prepare the report. When she told Darling of her concern, Darling instructed her to cash the checks separately (such that each was under the $10,000 threshold) and to transfer any inquiries regarding the transactions to her. Reid stated that when she received a call from someone at the bank asking why a CTR had not been submitted, she transferred the call to Darling as instructed.

Reid testified that she later saw Hawkins and Darling together in the bank in Darling's office. She stated that on separate occasions, while Hawkins was in the bank, Darling brought Treasury checks to Reid to cash. Each of the checks had been initialed by Darling and, again, the payees were not present and no account information or identification was provided. As with the checks Hawkins presented

_____

[1] Each of the checks was for an identical amount, $5,461.52, but listed different payees all residing at the same address. Reid testified that this was "unusual" and that she had never observed a similar transaction during her employment with the bank.

at the drive-through window, Reid stated that she cashed the checks because Darling, her branch manager, instructed her to do so. In total, Reid testified that she cashed seven Treasury checks for Hawkins based on Darling's approval.

Next, Gloria Merino, a former teller supervisor, testified that she too had seen Hawkins and Darling together at the bank in Darling's office, and that Darling had even instructed her to let Hawkins into the bank after hours on one occasion. She stated that, at Darling's request, she cashed two Treasury checks for Hawkins despite the fact that neither payee was present and no identification was provided. She explained that she made Hawkins sign the back of one of these checks because the transaction seemed "iffy" and she felt "uneasy" about cashing it. The second check, which was made out to LaTonya White, was later reported stolen. She stated that she later observed Darling placing an envelope in the bank vault with White's name on it, which was, in her words, "unusual."

Daniel Lipe, the bank's vice president for operations, also testified in the government's case. He stated that the bank had begun an investigation after receiving a complaint about Darling. This investigation, he explained, showed that Darling had authorized tellers to cash 18 to 20 Treasury checks for Hawkins, despite the fact that Hawkins was not the payee and the listed payees did not have accounts at the bank. It also revealed improprieties regarding accounts held by

5

Darling's relatives.[2]

According to Lipe, he and Darling's immediate supervisor, Denise Held, met with Darling to discuss the results of the investigation. During this meeting, Darling claimed that, contrary to the testimony from Reid and Merino, all of the Treasury checks were cashed by the payees. She also maintained that all of the payees had been present in the bank when the checks were cashed and that she had approved the transactions because the payees were employees of bank customers. Although Lipe and Held pointed out that many of the payees resided a considerable distance from Darling's branch and it was unlikely that so many people living far away would be employed by customers of the bank, Darling insisted that all payees had been present. When Darling was told that LaTonya White had reported her check stolen, Darling admitted that White had not in fact been present, but explained that she had cashed the check for Hawkins, whom she claimed was White's cousin. She also claimed that she had placed White's money in an envelope in the bank vault because White was going to pick it up.

Both Hawkins and Edward also testified against Darling. For her part, Hawkins admitted that she had been arrested and pleaded guilty in connection with

---

[2] Lipe testified that the investigation revealed "fictitious transactions," which inflated the balance of accounts held by Darling's children, and that Darling improperly authorized the payments and waived overdraft fees on these accounts. This, according to Lipe, resulted in an additional loss to the bank of $2,500.

6

the check fraud scheme. She explained that she had forged the endorsements on the three Treasury checks presented to Reid, and that Darling had cashed the checks for her because Darling had known her for more than ten years. She testified that when she returned to Darling's branch with more fraudulently endorsed checks, Darling demanded to be paid for cashing them. Hawkins explained that she returned to the bank on five or six occasions with approximately fifteen more checks, which Darling instructed the tellers to cash. She testified that she would meet Darling at the bank, where they would forge endorsements on the checks, after which Darling would take the checks to a teller to be cashed. Regarding the check to LaTonya White, Hawkins testified that Darling contacted her, told her that the check had been reported stolen, and asked whether the police had contacted her. According to Hawkins, Darling told her that the money had to be returned and so, when Hawkins brought another check to Darling, she cashed it and set the money aside to repay White.

In her testimony, Edward identified four checks that she had given to Darling to cash. She testified that she would meet Hawkins at the bank, where the two would fraudulently endorse the checks, and that she observed Darling cashing the checks for Hawkins and Hawkins paying Darling from the proceeds. Edward also testified that she personally paid Darling for cashing two Treasury checks.

The government also presented testimony from several victims, including LaTonya White. She testified that she had contacted the Internal Revenue Service after she did not receive her tax refund. When White learned that the check had been cashed at Darling's bank, she contacted the bank and spoke to Darling. According to White, Darling stated that she was "shocked" that this had occurred and offered on three or four occasions to personally refund White's money, but White refused.

The government presented an excerpt of Darling's deposition taken in a discrimination suit she filed against the bank. During that deposition, Darling denied "cash[ing] a whole slew of checks" for Hawkins, instead claiming that she had merely approved the transactions at the tellers' request because the checks exceeded $1,000. Darling admitted to cashing three checks for Hawkins, but claimed that all the payees had all been present and presented identification that matched the payee information on the checks.

Finally, the investigating agent testified regarding his investigation into twenty-one fraudulently endorsed Treasury checks cashed at the bank and the statement Darling had given to him. He explained that during his interview with Darling, she admitted authorizing the tellers to cash each of the checks. According to the agent, Darling told him that Hawkins had presented each of the checks to

8

her, and that she cashed them for her, despite the fact that Hawkins was not listed as a payee, because she was doing a favor for Hawkins.

At the close of the government's case, Darling took the stand and testified in her defense. Her testimony directly contradicted much of the testimony against her. In particular, she denied that she was standing next to Reid when she cashed the three checks for Hawkins at the drive-through and claimed that Reid had never informed her that Hawkins had not presented identification. She also denied that Merino brought her Treasury checks to cash. She denied that she ever fraudulently endorsed a Treasury check and denied accepting money from either Hawkins or Edward in return for cashing the checks. She claimed that Reid had lied about her instructing her to cash the checks separately to avoid having to file a CTR and that Reid and Merino had testified falsely to avoid personal responsibility for cashing the fraudulent checks. She also denied that she had spoken with White and offered to return her money. Instead, Darling claimed that after she learned of the fraud, she called Hawkins and instructed her to return the money immediately or she would call the police. She claimed that Hawkins returned the money as instructed and that she and her assistant had placed it in an envelope in the vault. On cross-examination, Darling denied that she had told the investigating agent that Hawkins had presented the checks and that she had cashed them for her as a favor.

9

After one day of deliberation, the jury found Darling guilty of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count 1); passing, uttering and publishing United States Treasury checks with forged endorsements in violation of 18 U.S.C. § 510(a)(2) (Counts 10-12, and 15); and receiving, delivering, or retaining United States Treasury checks with forged endorsements in violation of 18 U.S.C. § 510(b) (Counts 21-23, and 26). The jury acquitted Darling of Counts 5 through 8 and 16 through 19.

At sentencing, the district court determined that Darling's base offense level was 6 and that an eight-level increase was warranted because loss amount was $94,840.19. With a two-level enhancement for abuse of a position of trust under United States Sentencing Guidelines § 3B1.3, and a Criminal History Category of I, Darling's guideline range was 21 to 27 months. After noting that Darling expressed no remorse for her actions, the district court imposed a sentence of 21 months in prison and three years supervised release. This appeal followed.

II.

Darling contends that the evidence presented at trial was insufficient to support her convictions. "This Court reviews a defendant's challenge to the sufficiency of the evidence de novo."[3] United States v. Jones, 601 F.3d 1247, 1267

---

[3] Darling claims that she moved at the close of the evidence for judgment of acquittal under Federal Rule of Criminal Procedure 29. Her brief does not point to the place in the record

10

(11th Cir. 2010). "In evaluating the sufficiency of the evidence, we 'view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor.'" United States v. Frazier, 605 F.3d 1271, 1278 (11th Cir. 2010) (quoting United States v. Martinez, 83 F.3d 371, 374 (11th Cir. 1996)). "Accordingly, the evidence will be sufficient to support a conviction if 'a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" United States v. Jiminez, 564 F.3d 1280, 1284–85 (11th Cir. 2009) (quoting United States v. Calhoon, 97 F.3d 518, 523 (11th Cir. 1996)). "It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006).

To sustain Darling's conviction for conspiracy, the government was required to prove (1) a conspiracy (or agreement) between Darling and others; (2) that Darling knew the essential objects of the conspiracy, which are to do either an unlawful act or a lawful act by unlawful means; and (3) that Darling knowingly

where this motion was made and the government disputes that it was. But whether Darling actually made the motion as she claims does not matter because the evidence was more than sufficient to support her convictions even under a de novo standard of review.

11

and voluntarily participated in the conspiracy. United States v. Westry, 524 F.3d 1198, 1212 (11th Cir. 2008). Because a conspiracy is "predominantly mental in composition," the government frequently must rely on circumstantial evidence to prove its elements. Id. (quoting United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998)). "A conspiracy may be inferred from a 'concert of action.'" Id. (quoting United States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002)). To sustain her convictions on the substantive counts, the government was required to prove that Darling knowingly and fraudulently passed, uttered, and published Treasury checks bearing forged endorsements, see 18 U.S.C. § 510(a)(2), and knowingly received, delivered, or retained stolen Treasury checks, see 18 U.S.C. § 510(b).

The evidence is more than sufficient to support Darling's convictions. Both bank employees and Darling's co-conspirators testified that Darling authorized tellers to cash Treasury checks for Hawkins, despite the fact that Hawkins was not the payee. Hawkins and Edward testified that Darling agreed to cash the checks only after demanding to be paid a portion of the proceeds. And Hawkins testified that Darling herself forged the endorsements on some of the checks. Hawkins further testified that Darling was aware that LaTonya White's check had been stolen and that Darling took affirmative steps to conceal the fraud. And finally, the

12

jury heard testimony regarding Darling's various and conflicting explanations regarding her involvement with the check cashing scheme.

Moreover, Darling testified at trial in her own defense. When a criminal defendant testifies at trial, the jury is entitled to reject the defendant's testimony and to consider it as substantive evidence of his guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). "Where some corroborative evidence of guilt exists for the charged offense and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." United States v. Ellisor, 522 F.3d 1255, 1272 (11th Cir. 2008) (quotations and alterations omitted); see also United States v. Williams, 390 F.3d 1319, 1325 (11th Cir. 2004) ("Defendants in criminal trials are not obliged to testify. And a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case." (quotation marks omitted)). "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements" such as intent or knowledge. Brown, 53 F.3d at 315; Ellisor, 522 F.3d at 1272. Here, Darling's trial testimony directly contradicted the testimony of virtually every witness against her. The jury was free to disbelieve Darling's conflicting testimony and to construe it as substantive evidence of her guilt. The evidence was sufficient to support Darling's convictions.

13

III.

Darling contends that the district court committed numerous evidentiary errors, and that the cumulative effect of these errors requires reversal. Specifically, Darling claims that the district court (1) erroneously admitted hearsay testimony; (2) improperly admitted her deposition testimony from her civil suit against the bank; (3) erroneously allowed testimony concerning the improprieties discovered in her relatives' accounts; and (4) improperly admitted a report prepared by the bank containing handwritten notations. We will address each of these contentions in turn.

"We review the district court's evidentiary decisions only for a clear abuse of discretion." United States v. Novaton, 271 F.3d 968, 1005 (11th Cir. 2001). "Evidentiary errors 'do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted.'" United States v. Drury, 396 F.3d 1303, 1315 (11th Cir. 2005) (quoting United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)).

A.

Darling contends that the district court improperly admitted hearsay

14

testimony. In her brief, Darling does not discuss the particular testimony at issue, but rather merely provides a list of hearsay objections she claims were erroneously overruled. Based on these objections, Darling asserts, without explaining why it is so, that these errors require reversal because no reasonable juror could have found her guilty had this testimony not been admitted.

We have reviewed the list of objections in Darling's brief. Many of the pages in the record Darling cites do not contain any objection at all, and others contain objections on other grounds. Of the remaining hearsay objections Darling challenges on appeal, the record shows that the witnesses were recounting statements made by Darling herself. Such statements are "not hearsay." See Fed. R. Evid. 801(d)(2); see also United States v. Allison, 908 F.2d 1531, 1534 (11th Cir. 1990) ("'Any and all statements of an accused, so far as they are not excluded by the doctrine of confessions or by the privilege against self-incrimination, are usable against the accused and are not hearsay.'" (quoting United States v. Clemons, 676 F.2d 122, 123 (5th Cir. Unit B 1982))). Accordingly, the district court did not err by admitting testimony regarding Darling's statements.[4]

_____

[4] Darling also vaguely asserts that the district court erroneously allowed the government to ask leading questions and to present irrelevant evidence to the jury. Darling does not specify, however, why the district court's evidentiary rulings were incorrect or how those rulings were prejudicial to her. Thus, Darling has not shown that these evidentiary rulings, to the extent they were error at all, require reversal.

15

B.

Darling claims that the district court erroneously admitted her deposition testimony from her civil suit against the bank. At trial, the government presented portions of Darling's deposition in which she claimed, contrary to the other explanations she had provided, that she merely approved checks given to her by the tellers. Darling claims that admitting her deposition testimony violated the rule of completeness and her rights under the Fifth and Sixth Amendments.

The district court's admission of Darling's deposition testimony was not improper. The rule of completeness is not implicated because the district court admitted the entire deposition and Darling could have requested that any other portions of her deposition necessary to qualify or explain her testimony also be read to the jury. See Fed. R. Evid. 106. Admission of Darling's deposition did not violate her rights under the Confrontation Clause because the testimony was Darling's own. And finally, to the extent Darling claims its admission violated her rights under the Fifth Amendment, her complaint seems to be that she had no choice but to testify in an attempt to explain her damaging deposition testimony. As her objection makes clear, Darling's decision to testify was a tactical one; she was not compelled to testify in violation of the Fifth Amendment. See United States v. Perkins, 937 F.2d 1397, 1404–05 (9th Cir. 1991) (holding that a

16

defendant's "tactical  decision to testify" based on his "own subjective perception of what constitutes a proper trial strategy" is not compulsion triggering the Fifth Amendment, even if the defendant felt it necessary to testify because of a court's evidentiary rulings).

C.

Darling contends that the district court erroneously admitted evidence of the bank's investigation and the improprieties it discovered with respect to her family members' accounts.  The government responds that this evidence was "inextricably intertwined" with the evidence of the charged conduct because the account improprieties were discovered during the bank's investigation into Darling's role in cashing the Treasury checks and it was one of the reasons that Darling was terminated from her employment.

Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show action in conformity therewith.  Fed. R. Evid. 404(b).  We have held, however, that

> "evidence of other crimes, wrongs, or acts" falls outside the scope of Rule 404(b) when it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."

United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (quoting United

States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir. 1993)). Thus,

> "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985)). "And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quoting United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989)).

The record does not clearly demonstrate either the government's initial theory of admissibility or the district court's rationale for admitting the evidence concerning the account improprieties. And it is far from clear that this evidence was "inextricably intertwined" with the evidence concerning the charged conduct, as the government now asserts on appeal. But we need not decide whether the district court abused its discretion in admitting this evidence because we conclude that any error was harmless. See United States v. Hersh, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (concluding that any error in admitting Rule 404(b) evidence was

18

harmless in light of overwhelming evidence of guilt); <u>United States v. Hubert</u>, 138

F.3d 912, 914 (11th Cir. 1998) (finding error harmless where evidence of guilt was

"substantial"). The government presented substantial evidence of Darling's guilt at

trial. This included testimony from her two co-conspirators directly implicating

Darling in the scheme. Darling herself testified and flatly denied any involvement,

but the jury rejected her testimony. In view of this evidence, any error in the

admission of evidence concerning improprieties in her relatives' accounts was

harmless.

D.

In its rebuttal case, the government presented a "3201 report" prepared by

the bank relating to the three checks Darling authorized Reid to cash. This report

contained a handwritten notation that read: "Spoke with Brenda Darling. All

individuals came to cash each check individually. Brenda personally knows them

from church." Darling objected on grounds that admission of the 3201 report with

the handwritten notation violated her rights under the Confrontation Clause

because the person who made the notation did not testify at trial.

The Confrontation Clause of the Sixth Amendment provides: "In all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

the witnesses against him." U.S. Const. Amend. VI. "In <u>Crawford v. Washington</u>,

19

the Supreme Court held that the Confrontation Clause bars the admission of the testimonial statements of a witness who did not appear at trial unless the witness was unavailable and the defendant had a prior opportunity to cross-examine him or her." United States v. Caraballo, 595 F.3d 1214, 1227 (11th Cir. 2010) (citing Crawford v. Washington, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004)). The Supreme Court in Crawford observed, however, that certain statements "by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy." Crawford, 541 U.S. at 56, 124 S. Ct. at 1367. Thus, if the 3201 report qualified as a business record under Federal Rule of Evidence 803(6), there would be no constitutional violation.

The district court did not abuse its discretion in admitting the annotated 3201 report as a business record. Lorenzo Delzoppo, the bank's chief compliance officer, testified that the bank's computers analyze bank transactions on a daily basis and automatically generate 3201 reports to flag transactions that appear to exceed the $10,000 threshold for filing a CTR. He also explained that members of his staff then investigate the flagged transactions to determine if a CTR needs to be filed. He further explained that in the course of the investigation, bank staff annotate the computer-generated reports with handwritten notes, and that the bank then maintains those records for a period of five years as the law requires. He

20

specifically identified the 3201 report and accompanying notations as a record the bank maintained in the ordinary course of its business.  On this record, we cannot say that the district court abused its discretion in concluding that the 3201 report constituted a business record under Rule 803(6).  Because business records are inherently nontestimonial, see Crawford, 541 U.S. at 56, 124 S. Ct. at 1367, its admission did not violate Darling's rights under the Confrontation Clause.

Moreover, even assuming the admission of the annotated 3201 report violated the hearsay rule or the Confrontation Clause, Darling's convictions still would not properly be reversed because any error would be harmless beyond a reasonable doubt.  "For violations of the Confrontation Clause, harmless error occurs where it is 'clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  Caraballo, 595 F.3d at 1229 n.1 (quoting United States v. Candelario, 240 F.3d 1300, 1307 (11th Cir. 2001)).  Here, we readily conclude that the 3201 report and its handwritten notations did not contribute to the verdict.  The notations that Darling complains of merely reiterated the version of events that she told to Lipe and Held during their investigation—namely, that all of the payees had been present when the checks were cashed.  Thus, this evidence was largely cumulative of other properly admitted evidence at trial.  That being the case, we conclude that any error in

admitting the annotated 3201 report was harmless beyond a reasonable doubt.[5]

## IV.

Darling generally challenges her sentence in three ways. She argues that the district court improperly (1) enhanced her sentence based on facts not found by the jury when it included acquitted conduct in the loss amount and applied a two-level enhancement for abuse of a position of trust; (2) denied her request for a minor role reduction; and (3) denied her request for a downward variance. Darling failed to file timely objections to the presentence report as required by Federal Rule of Criminal Procedure 32, and the district court accordingly denied her objections as untimely.[6]

Generally, we review a district court's application and interpretation of the guidelines de novo, and its factual findings for clear error. United States v. Lopez-Garcia, 565 F.3d 1306, 1323 (11th Cir. 2009). Where sentencing objections are not properly raised before the district court, however, we review only for plain

---

[5] To the extent Darling claims that cumulative errors require reversal, we reject this claim. "The cumulative error doctrine 'provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'" Baker, 432 F.3d at 1223 (quoting United States v. Munoz, 150 F.3d 401, 418 (5th Cir. 1998)). Having reviewed the record in this case, we conclude that none of the errors Darling identifies, either alone or in combination, warrant reversal.

[6] The district court did the same to the government's untimely objection seeking a two-level enhancement for obstruction of justice.

error.  See United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995).  "For the Court to correct plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights."  Id.

A.

Darling contends that the district court improperly enhanced her sentence based on facts neither admitted nor found by the jury.  She claims that the district court improperly calculated the loss attributable to her frauds because its determination was based, in part, on acquitted conduct.  She also claims that district court erroneously applied a two-level enhancement for abuse of trust, because the facts supporting it were not found by the jury.

To the extent Darling claims that judicial fact-finding at sentencing is per se improper under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), her claim is without merit.  It is well settled that in the post-Booker world, a sentencing judge retains the authority to find facts relevant to sentencing by a preponderance of the evidence.  See United States v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007).  Thus, "a district court may enhance a sentence based upon judicial fact-finding provided that its findings do not increase the sentence beyond the statutory maximum authorized by facts determined in a guilty plea or jury verdict."  United States v. Dean, 487 F.3d 840, 854 (11th Cir. 2007).

Against this backdrop, the district court did not plainly err in determining the loss amount and enhancing Darling's sentence accordingly. "Section 2B1.1 provides the base offense level for defendants convicted of crimes involving fraud and deceit, and various increases in the offense level depending on the amount of money at issue." United States v. Maxwell, 579 F.3d 1282, 1305 (11th Cir. 2009). It provides for an eight-level increase where the loss amount is more than $70,000 but less than $120,000. U.S.S.G. § 2B1.1(b)(1)(E). "[I]n calculating the loss amount, the Guidelines require a district court to take into account . . . all relevant conduct." United States v. Foley, 508 F.3d 627, 633 (11th Cir. 2007) (quotations omitted).

Here, the district court found Darling responsible for a loss of $94,840.19, which was the total of twenty-one Treasury checks that were fraudulently cashed by Hawkins and Edward at Darling's bank. Darling does not contest this calculation, but rather argues that the loss attributed to her should be based only on the counts for which she was convicted. The district court's decision to consider acquitted conduct was not plain error. Binding precedent in this Circuit allows district courts to consider acquitted conduct in sentencing, so long as the government proves the conduct in question by a preponderance of the evidence and

the sentence imposed does not exceed what is authorized by the jury's verdict.[7]

See, e.g., United States v. Culver, 598 F.3d 740, 752–53 (11th Cir. 2010); United States v. Faust, 456 F.3d 1342, 1347–48 (11th Cir. 2006); United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005). These decisions have not been overruled by an en banc decision of this Court or the Supreme Court of the United States and we are not free to disregard them. See United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court. To constitute an 'overruling' for the purposes of this prior panel precedent rule, the Supreme Court decision must be clearly on point." (citation and quotation marks omitted)).

Nor did the district court plainly err in applying an abuse-of-trust enhancement. As explained above, district courts are empowered to find facts under a preponderance standard, so long as they apply the guidelines in an advisory manner and the sentence imposed does not exceed the statutory maximum. Darling's contention to the contrary is meritless.

B.

Darling argues that the district court erred when it denied her a minor role

---

[7] Darling does not contend that the government failed to satisfy its burden of proof or that the sentence imposed exceeds the sentence authorized by the jury's verdict.

25

reduction.  A district court may apply a two-level reduction to a base offense level "[i]f the defendant was a minor participant in any criminal activity."  U.S.S.G. § 3B1.2(b).  A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal."  Id. § 3B1.2 cmt. n.5.  The defendant "always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence."  United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

The district court did not plainly err in denying Darling a minor role reduction.  The evidence showed that Darling's position at the bank, and her role in the conspiracy, were essential to the success of the scheme.  That being so, the district court's decision to deny her a minor role reduction was not plainly erroneous.  See United States v. Salgado, 250 F.3d 438, 458 (6th Cir. 2001) ("A defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme, or if his importance in the overall scheme was such as to justify his sentence.").

## C.

Finally, Darling contends that the district court should have granted her a downward variance from her 21-month sentence, which was at the bottom of the

26

guidelines range. She claims that such a variance was necessary to avoid sentencing disparities between Hawkins and Edward, who received sentences of ten and fifteen months respectively. We reject this claim as well.

Both Edward and Hawkins pleaded guilty and provided substantial assistance to the government by testifying at Darling's trial. "We have held that defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009). In those circumstances, "[t]here is no unwarranted disparity even when the sentence the cooperating defendant receives is 'substantially shorter.'" Id. (quoting United States v. Williams, 526 F.3d 1312, 1323 (11th Cir. 2008)). As we have explained, "'it would seem patently unreasonable to endorse a regime in which a defendant could steadfastly withhold cooperation from the authorities and then cry foul when a coconspirator benefits from rendering substantial assistance to the government.'" Id. (quoting United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)). Because Darling did not enter a guilty plea or provide assistance to the government, there was no unwarranted disparity between her sentence and the sentences Hawkins and Edwards received. Accordingly, the district court did not abuse its discretion in imposing the sentence

it did.

       AFFIRMED.