[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11126
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-20851-JAL-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCARLET DUARTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 7, 2011)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Scarlet Duarte appeals her sentence of 97 months of imprisonment and

convictions for one count of conspiring to launder money, 18 U.S.C. § 1956(h),

and 5 counts of money laundering, id. § 1956(a)(1)(B)(i). Duarte challenges the sufficiency of the evidence to support her convictions, the calculation of her base offense level based on a factual finding that she was responsible for the activities of two of her co-conspirators, the enhancement of her sentence for using sophisticated means and for obstructing justice, and the reasonableness of her sentence. We affirm.

The district court did not err by denying Duarte's motions for a judgment of acquittal for "all crimes charged in [her] second superseding indictment." A combination of bank records, corporate documents, and the testimony of federal agents and employees; a pharmacist; Duarte's co-conspirators, Diana Sotto and Maria Loriga; and Duarte's stepfather established that Duarte and her co-conspirators used billing companies and shell corporations to submit fraudulent claims to Medicare and funneled payments received for those false claims to Duarte and her cohorts. Duarte laundered over $500,000 through her own corporation, SND Medical Services, by processing checks received from two Medicare billing companies, the Research Center of Florida and M&C Health Center, using an account Duarte opened at La Bamba Check Cashing Company. In one transaction, Duarte produced an invoice from SND charging M&C Health Center for $40,000 in medical equipment that was not purchased, and Duarte

cashed the $40,000 check provided by M&C. Duarte also laundered money through two shell corporations, Falcon Transport and 24-Hour Network Solutions. Duarte encouraged her stepfather to incorporate Falcon Transport ostensibly to transport patients to Sotto's medical clinic, but Falcon never conducted any legitimate business and Duarte's stepfather withdrew from the venture. Falcon was funded with payments from Sotto and the Project New Hope clinic owned by several co-conspirators, including Loriga and Sotto, and Duarte laundered the money by withdrawing $4700 from the account and having co-workers at another business cash checks made payable to them for amounts less than $10,000. Duarte also incorporated 24-Hour Network Solutions through which she laundered payments for nonexistent medical equipment and services from the Project New Hope clinic and All Medical Billing, which was owned by Sotto. Duarte, as the sole signatory on the 24-Hour Network account, endorsed $24,300 in checks made payable to herself or to cash and approved payments exceeding $20,000 to third parties for services received by Duarte and her cohorts.

Duarte argues that she acted at the direction of Sotto and was unaware that the money being transferred was proceeds of health care fraud, but we disagree. Duarte worked with Sotto in the health care industry and Duarte processed payments made to SND, Falcon Transport, and the 24-Hour Network for health

3

care equipment and services those companies never provided. Duarte testified and ran the risk that, if disbelieved, her testimony would be considered substantive evidence of her guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge . . . ." Id. The jury was entitled to disbelieve Duarte's testimony that she complied unwittingly with Sotto's instructions and to find that Duarte knew the money she laundered had been obtained by defrauding Medicare.

The district court did not clearly err by finding Duarte accountable for all the monies that passed through SND Medical Services. In the case of "jointly undertaken criminal activity," a defendant's base offense level must be determined based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction . . . ." United States Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (2009). Even if Sotto was the architect of the money laundering scheme and Duarte acted at her direction, Duarte incorporated SND, opened an account to cash its checks, and conducted illegal transactions. Whether or not Duarte endorsed all the checks cashed by SND, she was accountable for those monies because she controlled the financial operations of SND and because she

could reasonably foresee that her co-conspirators would use the SND account to launder money.

The district court also did not clearly err by enhancing Duarte's sentence for using sophisticated means to launder money. The Sentencing Guidelines provide for a two-level enhancement if the offense in question "involved sophisticated means," which the commentary defines as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense." Id. § 2B1.1(b)(9)(C) & cmt. n.8(B). Duarte established three corporate shells, SND, Falcon Transport, and 24-Hour Network Solutions, to launder money, produced false documents to camouflage money transfers, enlisted her father to serve as the nominee owner of Falcon, and recruited persons unaware of the conspiracy to withdraw money from Falcon.

The district court also did not clearly err in enhancing Duarte's sentence for obstructing justice. The district court found that Duarte testified falsely at trial about her knowledge of and participation in the $40,000 transfer from M&C Health Center to SND Medical Services, in establishing a check cashing account for SND, and in incorporating and accepting payments on behalf of Falcon Transport, and the record supports those findings. Duarte argues that the district court improperly based its decision on Duarte's false testimony at Sotto's hearing

5

for a new trial, but the district court refused to consider that earlier testimony on the ground that it did not relate to "the investigation, prosecution, or sentencing of the instant offense of conviction," id. § 3C1.1.  The district court enhanced Duarte's sentence for obstructing justice based on "her testimony on the stand in the case before" the district court.

The district court also did not abuse its discretion by imposing a sentence at the high end of the sentencing range.  The district court reasonably determined that a sentence of 97 months of imprisonment took into account Duarte's responsibilities to her children and her lack of criminal history and addressed the seriousness of Duarte's offense, the need to deter and protect the public from similar future misconduct, and the need to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a).  Duarte participated in a conspiracy that defrauded the Medicare program of more than $20 million dollars, and she employed more sophisticated means than some of her co-conspirators to launder money.  Duarte's sentence is reasonable.

We **AFFIRM** Duarte's convictions and sentence.