**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Floyd BROWN, James Woodrow Mullis,
Paul Wendell Calhoun, Jr.,
Defendants–Appellants.**

No. 93–8181.

United States Court of Appeals,
Eleventh Circuit.

May 15, 1995.

Alex Zipperer, Savannah, GA, for Calhoun.

Hinton R. Pierce, U.S. Atty., Karl Knoche, Asst. U.S. Atty., Savannah, GA, Thomas M. Gannon, Kathleen A. Felton, Dept. of Justice, Washington, DC, for appellee.

James G. Middlebrooks, Charlotte, NC, for F. Brown.

Edward D. Tolley, Cook, Noell, Tolley & Wiggins, Athens, GA, for Mullis.

Before EDMONDSON and CARNES, Circuit Judges, and MOYE *, Senior District Judge.

EDMONDSON, Circuit Judge:

James Mullis appeals his conviction for money laundering on the ground of insufficient evidence.[1] We affirm the conviction.

To show that Mullis laundered money, the government must prove that Mullis took part in a financial transaction with money he knew was obtained illegally and with the intent to promote the illegal activity or with intent to disguise the source of the money. *See* 18 U.S.C. § 1956. In reviewing a claim of insufficiency of the evidence, we view all evidence in the light most favorable to the government. *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir.1989) (per curiam).

Testimony by Gene Collins showed that Mullis was part of a drug organization headed by Gene Collins that bought and sold marijuana from Texas to Georgia.[2] From December 1990 to March 1991, many calls were made from Mullis' telephone to Texas. Mullis also drove Collins to Texas two or three times on drug business. Although Mullis transported no marijuana on those trips to Texas, he at another time did pick up a six-pound shipment of marijuana and take it to the 292 Club, a club owned by Collins through Collins' ownership of the Phoenix Timber Company.

Other testimony at trial showed more directly Mullis' participation in a scheme to launder the proceeds of the drug business. When Collins was buying the 292 Club, Dan McSwain, the club's owner, told Collins that McSwain could not take the entire $5000 down payment in cash. Collins testified that, in a conversation with Paul Calhoun (Collins' then lawyer) and with Mullis and Brown about the purchase of the 292 Club, Collins instructed Mullis and Brown each to go to different banks and to get a cashier's check for $2000. Collins also testified that Paul

---

* Honorable Charles A. Moye, Jr., Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Mullis was also convicted of conspiracy to distribute marijuana and cocaine. *See* 18 U.S.C. § 2 and 21 U.S.C. §§ 841, 846. Mullis appeals both his money laundering and conspiracy convictions by charging prosecutorial misconduct and error by the district court in sending only government tape transcripts to the jury. We affirm on these issues without discussion.

Floyd Brown appeals his convictions for conspiracy to possess with intent to distribute marijuana and cocaine and for money laundering.

Brown's appeal raises questions about prosecutorial misconduct, the district court's sending tape transcripts to the jury, sufficiency of evidence and the indictment for money laundering.

Paul Wendell Calhoun also appeals his conviction for money laundering based on insufficiency of the evidence and on the ground that the indictment improperly charged the offense. We conclude that Brown and Calhoun have shown no reversible error and affirm the convictions. *See* 11th Cir.R. 36–1.

2. Collins was indicted with the other members of the organization, but pled guilty and testified at trial for the Government.

Calhoun told Mullis to show Calhoun—that is, not Collins—as the remitter of the check.

The government's evidence was possibly enough to prove guilt beyond a reasonable doubt. The evidence was enough to prove that Mullis knew that Collins' money came from the marijuana business. And the fact, among other things, that Mullis showed Calhoun as the remitter of the check might properly allow a jury to infer that Mullis knew the purchase of the 292 Club was intended to hide Collins' drug proceeds. *See generally United States v. Macko,* 994 F.2d 1526, 1533 (11th Cir.1993) ("Circumstantial evidence may prove knowledge and intent."). But we have no need to decide finally whether the government's evidence alone was enough to prove guilt.

■ In addition to the other evidence of guilt, Mullis elected to take the stand and to testify in his defense. Defendants in criminal trials are not obliged to testify. And, a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case.[3] *United States v. Bennett,* 848 F.2d 1134, 1139 (11th Cir.1988). "[A] defendant whose motion for acquittal at the close of the Government's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the Government case enough for it to support a verdict of guilty." *McGautha v. California,* 402 U.S. 183, 214, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), *reh'g denied by McGautha v. California,* 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (1972), and *vacated in part on other grounds*

*sub nom. Crampton v. Ohio,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972).

■ Most important, a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt.[4] *See, e.g., United States v. Allison,* 908 F.2d 1531, 1535 (11th Cir.1990); *United States v. Howard,* 895 F.2d 722, 724–25 (11th Cir.1990); *United States v. Bennett,* 848 F.2d 1134, 1139 (11th Cir.1988); *United States v. Eley,* 723 F.2d 1522, 1525 (11th Cir.1984). By "substantive evidence" we mean evidence "adduced for the purpose of proving a fact in issue, as opposed to evidence given for the purpose of discrediting a witness (*i.e,* showing that he is unworthy of belief), or of corroborating his testimony." *See Black's Law Dictionary* 1429 (6th ed. 1990). To be more specific, we have said that, when a defendant chooses to testify, he runs the risk that if disbelieved "the jury might conclude the opposite of his testimony is true." *Atkins v. Singletary,* 965 F.2d 952, 961 n. 7 (11th Cir.1992); *accord United States v. Sharif,* 893 F.2d 1212, 1214 (11th Cir.1990). Mullis testified under oath that he did not know that Gene Collins was in the drug business. He also testified that he was in no way involved in helping Collins buy the 292 Club. But, the jury, hearing Mullis' words and seeing his *demeanor,* was entitled to disbelieve Mullis' testimony and, in fact, to believe the opposite of what Mullis said.

■ At least where some corroborative evidence of guilt exists for the charged offense (as is true in this case where, for example, there was evidence that Mullis

3. Our colleague in dissent has made much of the 1994 Amendment to Federal Rule of Criminal Procedure 29. At the outset, we hold that the amended Rule applies to no cases tried to verdict before the effective date (1 December 1994) of the amendment. A retroactive application on appeal of a rule designed to control proceedings in criminal trials seems neither just nor practical to us. Justice and practicality are the standards. *See* Order of Chief Justice Rehnquist dated 29 April 1994. This case was fully tried before 1 December 1994. And, by the way, no party in this case has cited the Amendment to the Rule to us.

The law applicable to this case is established by precedent binding on this panel. A defendant who presents evidence waives the right to appeal the denial of his Rule 29 motion made and de-

nied at the end of the government's case. Instead, the law of this Circuit is that an insufficiency of the evidence claim like this one will be reviewed taking into account all evidence presented in the case, including evidence put on by the defendant. *United States v. Thomas,* 8 F.3d 1552, 1558 n. 12 (11th Cir.1993).

4. As we understand the core of the dissent, our colleague, in effect, rejects the idea that disbelieved testimony of a criminal defendant is substantive evidence to be counted toward guilt. But a significant body of precedent in this circuit recognizes that disbelieved testimony is substantive evidence to prove guilt; and this panel must faithfully credit those precedents. *See Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

helped convert cash to a cashier's check to advance the purchase of the 292 Club) and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense. This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge, such as knowing that the purchase of the 292 Club was intended to hide Collins' drug proceeds. *See United States v. Morales,* 868 F.2d 1562, 1574 (11th Cir.1989); *United States v. Eley,* 723 F.2d at 1525. Experience tells us that, where the issues in litigation involve highly subjective matters, the appearance and demeanor of the witnesses is of particular significance. *See, e.g., General Ins. Co. v. Thielepape,* 400 F.2d 852 (5th Cir.1968).

Because the evidence was sufficient, Mullis' conviction for money laundering is affirmed.

AFFIRMED.

MOYE, Senior District Judge, concurring and dissenting:

### I.

I concur in the affirmance of the convictions of defendants Brown and Calhoun, and of Mullis's drug conviction; I most respectfully dissent from the affirmance of the conviction of defendant Mullis on the money-laundering count. I would reverse that conviction for the reason that, considering all the evidence in the aspect most favorable to the government, there was insufficient evidence upon which a reasonable jury could have found defendant Mullis guilty beyond a reasonable doubt.

This case concerns a drug money-laundering conspiracy. The "King Pin", Gene Collins, became a government witness pursuant to a plea agreement and testified against his underlings, the three appellants here, including Mullis, his driver and bodyguard. After analyzing all the government's evidence against Mullis on the money-laundering count, the majority was able to conclude only that the government's evidence was *possibly*

enough to prove guilt beyond a reasonable doubt.

The government's evidence was *possibly* enough to prove guilt beyond a reasonable doubt. The evidence was enough to prove that Mullis knew that Collins' money came from the marijuana business and the fact, among other things, that Mullis showed Calhoun as the remitter of the check might properly allow a jury to infer that Mullis knew the purchase of the 292 Club was intended to hide Collins' drug proceeds. (Emphasis added).

Recognizing that under their analysis of the government's evidence, Mullis's conviction must be reversed, the majority adds:

But we have no need to decide finally whether the government's evidence alone was enough to prove guilt.

The majority does not consider what if any evidentiary contribution the defendant's testimony (or defendant's other evidence) makes toward allowing a reasonable jury to find Mullis guilty beyond a reasonable doubt, but holds that the mere fact that Mullis testified in person absolves this court of the duty of determining whether all the evidence of record was sufficient to support his conviction. It is only on this, I believe fundamental, point that I differ from the majority and feel myself compelled to dissent.

In support of its position with respect to the effect of a defendant's own testimony, the majority relies on several legal or procedural propositions, completely sound of themselves, but not altering the duty of this appellate court to insure that all criminal defendants receive due process of law which requires among other things a unanimous verdict of guilty (present here) based upon evidence upon which a jury reasonably could have found guilt beyond a reasonable doubt. The majority of a panel of a Court of Appeals today squarely holds, for the first time, that the evidence supporting the conviction of a defendant who takes the stand and testifies in his own behalf is unreviewable.

The majority says, that "Defendants in criminal trials are not obliged to testify. And a defendant who chooses to present a defense runs a substantial risk ... that he

will bolster the Government case enough for it to support a verdict of guilty."

It is undisputed that, in federal court, a defendant's sworn testimony must be treated just as the testimony of any other witness, and his testimony which itself is evidence may supply the very factual element or elements necessary to his conviction.

But while a criminal defendant runs the risks associated with all federal trials (no longer laboring under the disability formerly associated with state procedures) he should not be penalized in a way different from other litigants in federal court by forfeiting thereby the basis for rational appellate review of the evidence.

Also it is undisputed that the jury may choose to believe the defendant, in whole or in part, or to disbelieve him entirely. All questions of credibility are for the jury. Proof of their disbelief is found in a jury's verdict of guilty; and it is only where there has been a guilty verdict (where the jury has disbelieved a testifying defendant) that an appellate court must determine the sufficiency of the evidence. The sufficiency of the evidence has always heretofore been determined upon the record itself, the transcript of testimony and the exhibits, which the appellate court could analyze and on the basis of a record before it determine whether the guilty verdict (the record evidence of the jury's disbelief of defendant's case) was supported by the evidence. Since what is in the jury's mind is unknowable, other than it must have disbelieved the defendant since it entered a verdict of guilty, to put its disbelief (the verdict itself) into the scale to be weighed by the appellate Court necessarily precludes in a sort of "boot strap" way appellate review as to the sufficiency of the evidence where a defendant has testified.

The "substantive evidence" proposition referred to by the majority apparently derives most recently from Judge Hill's opinion in *United States v. Eley*, 723 F.2d 1522, 1524–26 (11th Cir.1984) which involved the inference/presumption from recent possession of stolen property. The *Eley* court held that:

Unlike the defendant's explanation in *Cosby v. Jones*, [682 F.2d 1373 (11th Cir. 1982),] Eley's explanation is so implausible

that it gives rise to positive evidence in favor of the government. Accordingly, we hold that appellant's possession of goods recently stolen, together with the corroborating evidence arising from his wholly incredible story, are sufficient proof of theft and transportation to support the jury's guilty verdicts on both counts of the indictment.

*Eley*, at 1525. Thus, *Eley* must be read in connection with its understanding of *Cosby v. Jones*, supra:

In *Cosby*, the court held that the bare fact of possession and the pawning of stolen goods, absent some type of corroborating evidence or circumstances, does not give rise to an inference sufficient to support a defendant's conviction for burglary. The court observed that the defendant's explanations of his possession of the stolen goods was not seriously contradicted by any evidence of the government. *Id.* at 1382. The court further noted that the inference of stolen goods "is at its strongest when the defendant wholly fails to make a credible explanation or makes a demonstrably false explanation." *Id.* at 1382–83. Cosby's explanation of possession was found not so implausible or demonstrably false to give rise to positive evidence in favor of the prosecution. *Id.* at 1383 n. 19.

*Eley*, 723 F.2d at 1524. The Court in *Cosby* had observed:

The state also points to the inconsistencies in Cosby's explanation of possession. *See* note 17 *supra*. His testimony was not so implausible or demonstrably false as to give rise to positive evidence in favor of the government. *Accord, Holloway v. McElroy*, supra, 632 F.2d [605,] at 641 [(5th Cir.1980)] (inconsistencies in defendant's story do not support government's case but only discredit the specific points in defendant's testimony). *Compare U.S. v. Contreras*, 667 F.2d 976, 980 (11th Cir. 1982) ("wholly incredible" evidence bolsters government's case).

*Cosby*, 682 F.2d at 1383 n. 19 (emphasis added).

It should be noted further that *Eley* went only so far as to hold that the implausible evidence could be considered as "corroborating" evidence, sufficient to enable a jury reasonably to draw the inference of knowledge from recent possession, not the basic evidence in chief supplied by the proof of recent possession. The majority here reverses that order, and says that where a defendant has testified, regardless of the substance of his testimony, all that is required is corroborative evidence of guilt.

Subsequent Eleventh Circuit·cases involving the effect of statements, testimonial or out-of-court, by defendants, have adhered to the *Cosby/Eley* analysis: the usual rules governing testimony by all witnesses are followed with the exception.that an aberrational statement (in or out of Court) by its implausibility or falseness, demonstrable to the appellate court from the record itself, may provide corroboration for an inference arising from behavior requiring explanation.

*United States v. Allison,* 908 F.2d 1531, 1535 (11th Cir.1990), cited by the majority, was decided on the right of the jury to make a credibility determination:

> The jury in this case had the opportunity to consider not only the evidence presented in the prosecution's case, but the testimony of defendants themselves. This is important. "Presented with ·two narratives, one tending to establish the defendant's guilt and another tending to establish innocence, the jury was entitled to choose the account offered by the government."

*Id.* at 1535 (citation omitted). That is clearly a correct statement, with which there is no disagreement, indicating that the *Allison* court had found the Government's evidence sufficient for a reasonable jury to find guilt beyond a reasonable doubt.

In *U.S. v. Howard,* 895 F.2d 722, 724 (1990) relied upon by the majority here as well as by the *Allison* Court, the clear finding on the sufficiency of the evidence was:

> "We believe this evidence was sufficient to allow a jury to conclude, beyond a reasonable doubt, that Howard and James knew the essential nature of the conspiracy, that is to distribute marijuana."

In *U.S. v. Bennett,* 848 F.2d 1134, 1139 (11th Cir.1988), relied upon the majority as well as by the *Allison* court, the court found:

> "We conclude that there was ample evidence from which a reasonable jury might find both William and Michael Bennett guilty beyond a reasonable doubt."

The Court noted the fact that the Bennetts's in-trial explanation of their activities was "dubious, if not wholly incredible." The court stated that "a reasonable jury might well disbelieve the explanation and conclude that the Bennetts were lying in an attempt to cover up illegal activities." Even if that statement, coupled with the reference to *Eley,* meant that the *Bennett* court assigned some evidentiary weight to the fact defendants made an implausible explanation of their activities, it nevertheless proceeded to determine the sufficiency of all the evidence to support a conviction.

But, in this case the majority already has determined that the government's evidence was sufficient to establish only a "possibility" of guilt. There is no suggestion that the defendant's testimony was either demonstrably false, dubious or implausible. The majority summarize Mullis's testimony (pp. 314–15).

> Mullis testified under oath that he did not know that Gene Collins was in the drug business. He also testified that he was in no way involved in helping Collins buy the 292 Club. But, the jury, hearing Mullis' words and seeing his *demeanor,* was entitled to disbelieve Mullis' testimony and, in fact, to believe the opposite of what Mullis said.

(Majority Opinion, p. 314). Of course, the jury could disbelieve Mullis, but to "believe the opposite" the jury would have also to "believe the opposite" of the testimony of the government's own witness. The testimony of the government's chief witness in substance was identical to that of defendant on the critical issue of knowledge. Mr. Collins on tape said to a government informant:

> "Now, here's my opinion, now here's my opinion.... Cause Jim (Mullis) don't know nothing about what's going on.

Now, Jim's a damn good boy, and ... would die for me in a heartbeat. But Jim's a logger and a pulpwooder, and he don't have (deleted). And he ain't got nothing in my business. But he ain't got nothing in my business. Nothing whatsoever."

See Exhibit R–13–362–364; R 379–80. The Circuit's evidentiary rules as to implausible, dubious or demonstrably false explanations are inapplicable here. Demeanor is a factor which the jury may take into account in assessing credibility—it is not evidence itself. The jury was entitled to believe the "opposite" of what Mullis said, but only if there was some evidentiary basis for whatever that "opposite" was. Nor has the majority attempted to determine, as required by *Cosby, supra,* the degree of inconsistency, falseness or dubiety necessary for such testimony to be considered under the implausible testimony doctrine. Since the government's evidence, as found by the majority, is insufficient to establish guilt beyond a reasonable doubt even after giving it the benefit of all reasonable inferences, I would reverse Mullis's money-laundering conviction.

## II.

It has long been the rule in the Eleventh Circuit, inherited from the Fifth, that by presenting evidence a defendant waives the right to appeal the denial of his Rule 29 motion made at the end of the government's case. The purpose of the rule is quite understandable. It is undesirable to let go free a defendant whom the whole evidence shows to be guilty even though the government may not have done a good job in making out its case-in-chief. But, giving the rule its full effect, I respectfully believe it results in manifest injustice to go so far as the majority does in this case, that is, to combine it with a newly announced rule that the mere fact of a defendant's testifying in person will preclude appellate review on the sufficiency of the evidence. Here there has been no additional evidence provided by the defendant to shore up the government's case, to carry it from "possibly" to "beyond a reasonable doubt."

Fed.R.Crim.P. 29(b) as amended effective December 1, 1994, should be held applicable to this proceeding.[1] That rule as now amended provides:

The court may reserve decision on a motion for judgment of acquittal, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. *If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.*

Fed.R.Crim.P. 29(b) (emphasis added). The Notes of the Advisory Committee on the Federal Rules of Criminal Procedure explain the rationale of the amendment:

Reserving a ruling on a motion [for judgment of acquittal] made at the end of the government's case does pose problems, however, where the defense decides to present evidence and run the risk that such evidence will support the government's case. To address that problem, the amendment provides that the trial court is to consider only the evidence submitted at the time of the motion in making its ruling, whenever made. And in reviewing a trial court's ruling, the appellate court would be similarly limited.

Notes of the Advisory Committee on Rules, 1994 Amendment, Fed.R.Crim.P. 29(b). The Advisory Committee clearly perceived the courts's inability to reserve ruling as presenting defendants a "damned if you do—damned if you don't" choice to which they should not be subjected.

In the case *sub judice,* under existing law the trial court could not have reserved ruling on defendant's motion for judgment of acquittal. *United States v. Thomas,* 987 F.2d 697, 704 (11th Cir.1993). The amendment of Rule 29(b) necessarily alters the rule in this Circuit prohibiting district courts from reserving ruling on motions for judgment of acquittal made at the close of the govern-

---

**1.** *See* order of Chief Justice Rehnquist dated April 29, 1994. *See also Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973); *F.D.I.C. v. 232, Inc.,* 920 F.2d 815 (11th Cir.1991).

ment's case-in chief, which rule circumscribed the trial judge here.

The amended rule however refers in terms only to situations where the court does in fact defer ruling on a Rule 29 motion; such of course was not possible in this case, nor will courts hereafter necessarily have to reserve ruling, although prudent courts, mindful of defendants' rights, undoubtedly will do so.

But to apply one rule to a defendant where the court has reserved ruling and another to a defendant where the court has erroneously overruled a Rule 29 motion is incongruous. The basic problem being the same, justice requires a like solution.

I believe that manifest justice requires that amended Rule 29 be applied at the appellate stage in this pending criminal appeal. If that were done, then, under the majority's own analysis, Mullis's conviction would have to be reversed.