[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 6, 2011
JOHN LEY
CLERK

No. 10-13568
Non-Argument Calendar

_____

D.C. Docket No. 6:08-cr-00028-GAP-DAB-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIRA HONG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 6, 2011)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Vira Hong appeals her conspiracy to commit bank fraud and pass a fictitious

instrument. 18 U.S.C. § 371. Hong argues that the evidence is insufficient to

establish that she intended to or actually entered an agreement to deposit a fraudulent check. We affirm.

Ample evidence establishes that Hong conspired with Marcus Rogozinski to present a fraudulent check to a bank for payment and to profit from the fraud. Hong created and mailed to Rogozinski what appeared to be a check for over $10 million that Hong had designed using check printing software and blank check stock. The check named as payee the "Treasury/UCC Contract Trust" located at "1500 Pennsylvania Avenue N.W., Washington, D.C. 20220," bore the routing number for the Federal Reserve Bank in New York, and listed a payor, payee, and numeric and written amounts. Although the check had several "red flags," including the large dollar amount, trusts named as both the payor and payee, and included the statement "Signature Not Required" on the signature line, the Bank of America processed the check when Rogozinski presented it for deposit because the check bore the characteristics of a negotiable instrument. When Hong later spoke to Rogozinski in three recorded telephone calls, Hong's remarks revealed that she had agreed with Rogozinski to deposit the fraudulent check as part of a scheme to defraud. Hong expressed excitement after learning that the bank had accepted the check; Hong said that she "definitely want[ed] something" from the proceeds; she agreed three times to obtain other checks to "try doing it again"; she

explained that she had asked Rogozinski to add a "passcode" to the signature card for his bank account so that "nobody [could] retrieve it . . . except [him] and [her]"; and, when making final plans to travel and meet Rogozinski based on his representations that the check had cleared, Hong inquired if the funds had been "moved . . . . Like [she] [had] told" Rogozinski. Federal agents arrested Hong after she met Rogozinski in Orlando, Florida, and Hong admitted to the agents that "she had indeed manufactured the check" and had created other checks from which she had profited "possibly in the thousands." Although Hong told the agents that she was due the money from the Social Security Administration "based on the work she had done and the funds she had paid in," Hong conceded that she had never earned $10 million. In addition, Hong's testimony at trial about choosing an uneven amount for the check based on Rogozinski's "experience with . . . Secret Service and Homeland Security and . . . with his friends at the bank and lawyers" supported the theory of the United States that Hong and Rogozinski had entered into a conspiracy to defraud a bank.

Hong challenges the denial of her motion for a judgment of acquittal on two grounds, but both her arguments fail. First, Hong argues that her convictions rest on information solicited by Rogozinski during their telephone conversations and those conversations are not sufficient evidence of the conspiracy because

3

Rogozinski called her as an agent of the United States, not as a "culpable conspirator." United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006) ("If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy."). Whether or not the conspiracy ended before the conversations occurred, Hong's remarks to Rogozinski can be reasonably interpreted to relate to an preexisting agreement for Rogozinski to present the check at the Bank of America. Hong's remarks, the evidence of her role in the conspiracy, and her admissions to federal agents and during the trial, established Hong's participation in a conspiracy to defraud. Second, Hong argues that she was entitled to an acquittal because her testimony that she created the check to transfer money between trust funds held by the United States Treasury provided an innocent explanation for her "misguided," "misinformed," and "eccentric" conduct. The jury was entitled to discredit Hong's testimony and treat it as substantive evidence of her guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). The district court did not err by denying Hong's motion for a judgment of acquittal.

Hong's conviction is **AFFIRMED**.