[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15794
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00011-LSC-RRA-4


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT RUSSELL,
a.k.a. Bobby Russell,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 12, 2012)

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Robert Russell appeals his convictions for mail fraud, in violation of 18 U.S.C.

§ 1341, and mail fraud conspiracy, in violation of 18 U.S.C. §§ 1341, 1349.  On appeal, Russell argues that the trial evidence was insufficient because it did not demonstrate that he showed his alleged co-conspirators how to fraudulently order drugs over the internet, that there was an agreement to carry out a fraudulent scheme, that he intended online pharmacies to suffer losses, or that he sent false or misleading information to pharmacies to obtain drugs.  After careful review, we affirm.

We review sufficiency of the evidence de novo.  United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009).  In determining whether there is sufficient evidence to support the convictions, we view the evidence in the light most favorable to the defendant and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt.  United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991).   The jury is free to choose among the reasonable conclusions to be drawn from the evidence presented.  United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989).  We assume that the jury made all credibility choices in support of the verdict.  Maxwell, 579 F.3d at 1299.  Statements by the defendant, if disbelieved by the jury, can be considered substantive evidence of the defendant's guilt.  United States v. Brown, 53 F.3d 312, 314 (11th Cir 1995).

Mail fraud under 18 U.S.C. § 1341 consists of intentional participation in a scheme to defraud a person of money or property and the use of the mails in

2

furtherance of the scheme. United States v. Smith, 934 F.2d 270, 271 (11th Cir. 1991); see also Maxwell, 579 F.3d at 1302 (rejecting defendant's argument that he did not deprive an entity of money or property where it received the work it sought, and basing this decision on the fact that "financial loss" is not at the core of the mail fraud statute, rather, the statute also seeks to punish intent to obtain money or property fraudulently). A scheme to defraud requires a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. Maxwell, 579 F.3d at 1299.

Conspiracy requires an agreement between the defendant and one or more other persons, where the object is to commit either an unlawful act or a lawful act by unlawful means. United States v. Vaghela, 169 F.3d 729, 732 (11th Cir. 1999). For mail fraud conspiracy, the government must show that the defendant knowingly and willfully joined in the unlawful scheme to defraud. Maxwell, 579 F.3d at 1299. Circumstantial evidence can be used to show knowledge of the scheme. Id.

Count 13 of the indictment alleged that Alfred Shawn Johnson, Kristi Fraley, Marcus Oakley, Russell, and others conspired to commit mail fraud. To begin, Oakley and Johnson testified about how they became involved through Russell in the scheme to defraud by ordering prescription drugs over the internet. Oakley described how he would provide Russell with his identification information and an old medical

3

record, and they would order the pills and then split them. Oakley also described his own operation, in which he ordered prescription drugs for third parties using altered medical records, and explained that he learned how to order prescription drugs online from Russell and that his operation was "similar to" Russell's operation.

The evidence further showed the fraudulent nature of Russell's scheme and the misrepresentations used to deceive the online pharmacies and obtain drugs. Oakley explained that he witnessed Russell ordering pills online using the names of third parties on multiple occasions, and he witnessed Russell using the identifications of third parties to facilitate this activity. After the orders were placed, he and Russell would pose as the persons in whose names the pills were ordered. Oakley altered medical records and when asked if Russell did this, said that "we all done it." Although the pills were ordered in a particular person's name, Johnson and Oakley each sold some of the pills that they obtained, and Russell also sold some of the pills. In addition, the physical evidence presented -- including pill bottles found in the truck and at the residence of Russell, and copies of driver's licenses of third parties and medical records of third parties found both in Johnson's and in Russell's residences -- further supported the existence of this scheme to defraud. And although there is no evidence that the online pharmacies suffered financial loss, the evidence showed that the scheme to defraud existed because Oakley, Johnson, and Russell made material

4

misrepresentations to the online pharmacies, which caused them to send the drugs. See Maxwell, 579 F.3d at 1302.

The evidence also showed an agreement among Oakley, Russell, and Johnson to carry out the scheme to defraud, and Russell's knowing and willful participation in the scheme. Oakley and Johnson each initially worked directly with Russell to order prescription drugs over the internet. Oakley used Russell's computer and fax machine to place his order and the two ordered pills together several times. Even after Oakley began ordering pills over the internet on his own, he and Russell "still talked to each other," and Oakley said that if he "needed money I would go get it from Bobby [Russell], get my orders." Johnson said that in order to become involved in the scheme, he had to "buy my way in" and make his first few orders with either Oakley or Russell.

Moreover, the parties shared significant information in carrying out the scheme. Oakley and Russell shared websites where drugs could be ordered. Johnson and Russell shared medical records, some of which had been altered. Johnson allowed Russell to have access to identification cards and driver's licenses that were at Johnson's residence. This sharing of information was further supported by the physical evidence, which included copies of Oakley's identification information that had been found in the search of Russell's residence; copies of Russell's identification

5

information and medical records that had been found in the search of Johnson's residence; and similar paperwork for a third party, Brandon Gene Prestridge, that had been found in both Russell's and Johnson's residences.

The evidence also showed that Russell knowingly and willfully participated in the scheme. For example, Russell told Oakley he could get pills in Ken McDonald's name because he had copies of his driver's license and social security card. Physical evidence consisting of a pill bottle labeled with McDonald's name, copies of his identification, and his medical records, were found in the search of Russell's residence. Although other pills were ordered in Johnson's name, not in Russell's name, Russell took half of these pills as payment.

As for the substantive mail fraud count, the evidence showed that Russell and Johnson defrauded an online pharmacy in Ocala, Florida, by ordering drugs in Carla Pigg's name. Oakley testified that Carla Pigg gave him her driver's license, but he said that he did not order pills for Pigg. Rather, as we've detailed, the parties to the scheme significantly shared information. So, for instance, Oakley shared his customer identifications with Russell, and Oakley and Johnson also shared medical records. A cover sheet was found in Johnson's residence that contained Carla Pigg's email address and password. Johnson admitted that he wrote the cover sheet and that he would have used it to order drugs over the internet. Copies of Pigg's driver's

6

license and medical records were also found in Johnson's residence. Johnson and Russell shared records and Johnson allowed Russell access to identification cards and copies of driver's licenses at his residence. In addition, a January 2009 search of the truck that Russell was driving yielded a pill bottle labeled in Carla Pigg's name for hydrocodone, which was from Sunshine Drugs in Ocala, Florida. Furthermore, Russell denied knowing Pigg and claimed he had never seen her identification information, adding support that the pill bottle in her name was obtained fraudulently. In considering this evidence together, a reasonable juror could infer and conclude that Russell and Johnson had defrauded an online pharmacy in Ocala, Florida, by ordering drugs in Pigg's name. We therefore affirm Russell's convictions for mail fraud conspiracy and mail fraud.

**AFFIRMED.**