[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14733
Non-Argument Calendar
_____

D.C. Docket No. 9:08-cr-80022-KAM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LABENZ TURNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 17, 2014)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Labenz Turner appeals the revocation of his supervised release and resulting

24-month sentence, which the district court imposed after finding that he had

violated the terms of his supervised release by committing felony battery. Turner contends that the evidence was insufficient to prove that he committed felony battery and that his sentence is procedurally and substantively unreasonable.

I.

In August 2008 Turner pleaded guilty to one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371. He was sentenced to 54 months imprisonment and a three-year term of supervised release, but the supervised release was cut short by events that occurred on July 19, 2013.[1] Early that morning, police responded to a 911 call at the Stonybrook Apartments in Riviera Beach, Florida. According to witnesses at the scene, Turner had forced Kijafa Smith to leave an apartment at gun point, hit her in the face, and pulled her down the stairs. He then forced her into a sedan with two other men who dropped them off at Smith's car. After Smith dropped Turner off at an unknown location, she drove to the home of some her relatives, where police found her sitting in her car.

As a result of these events, Turner's probation officer filed a superseding petition to revoke his supervised release in August 2013. The petition listed nine different violations of the terms of his supervised release. Six of them qualified as

---

[1] The following summary of events was taken from the probation officer's report and recommendation. We will consider and analyze the evidence presented against Turner at his hearing separately.

Grade A violations: (1) occupied burglary with a firearm, (2) kidnapping, (3) felony battery, (4) aggravated assault, (5) possession of a firearm during commission of a felony, and (6) being a felon in possession of a firearm. See United States Sentencing Guidelines § 7B1.1(a)(1)(A)(i) (Nov. 2012). The remaining three were Grade C violations: (7) Turner's failure to submit truthful and complete monthly reports, (8) failure to attend a required weekly therapy class, and (9) failure to report to his probation officer. See id.

The district court held an evidentiary hearing to determine whether Turner had in fact violated the terms of his supervised release. At the start of the evidentiary hearing, Turner admitted to all of the Grade C violations. However, he denied committing the six Grade A violations (which were all criminal offenses).

To prove those violations, the government called Detectives Francisco Aguirre and Richard Rott, the police officers who had responded to the 911 call. The detectives described how they had arrived at the apartment and interviewed two of Smith's cousins, Shana and Shanae Johnson, both of whom witnessed Smith's abduction. The district court allowed the detectives to testify about the statements of Shana and Shanae, subject to a later ruling on their admissibility. Detective Aguirre testified that Shanae told him that Smith had been staying at her apartment because she was scared of Turner and that Turner had pulled Smith from the apartment while pointing a gun at her and hitting her. Detective Rott's account

3

of Shana's story was similar.  The detectives had also made recordings of the women's statements, which were played at the hearing but not transcribed by the court reporter or physically entered into evidence.  Detective Aguirre testified that Shana showed him a necklace that she said Turner had ripped off of Smith's neck while pulling her out of the apartment; Smith later confirmed that the necklace was hers.

In addition to testifying about the eyewitnesses' statements, the detectives described their encounters with Smith.  Detective Aguirre testified that when he located Smith, she appeared to be very frightened and did not want to talk to him.  Her face was swollen and bruised and she had a cut on her left cheek that required stitches.  Detective Rott testified that Smith's wound was still bleeding when they arrived.  Smith eventually went to the hospital to get her injuries treated.  After she left the hospital, she gave Detective Rott a recorded statement about what had happened.  Like the other recordings, it was played in court but not transcribed or physically entered into evidence.

The government did not call any of the eyewitnesses or Smith because they had not cooperated with the investigation since their initial contact with the police.  The government did, however, introduce a recording of a phone call that Turner placed from jail to Smith in which Smith admitted that she had told the police that Turner had hit her with his fist.  It also entered into evidence photographs of

4

Smith's injuries taken at the scene and at the hospital, a photograph of the necklace that had been ripped off of her neck, and photographs of bloodstains in the car in which Smith was found.

After the government rested, Turner called Smith as a witness. She testified that she was in a relationship with Turner in July 2013 when all of this happened.[2] Smith stated that on July 19, she had asked Turner to come pick her up at Shana Johnson's apartment. She further testified that, as they were leaving the apartment, they got into an argument because another girl had called Turner's cell phone. Smith wanted to see the phone, and Turner did not want to give it up. Smith said that she had tried to take Turner's phone from him, which led to a scuffle, and that Turner had grabbed her shirt, tearing her necklace from her neck. However, Smith testified that he did not hit her until they got into her car. Once they were in her car, the fight for the phone continued. Smith first stated that Turner hit her on the left side of her face with his fist while she was driving the car and he was in the passenger seat. The district court interrupted her testimony at that point to note that the story was unbelievable. Speaking to Turner, the court said, "You know she just said that she was driving the car and you reached over and hit her. But the cut on the pictures are on the left side of her face. You know that, right, Mr. Turner?" Turner's attorney responded that he had told Smith and Turner to tell the

_____

[2] By all appearances, their relationship was still intact at the time of the hearing.

truth but that the testimony she had given was inconsistent with what they had told him before. Smith then revised the story slightly, saying that she was not driving when the fight happened but was sitting in the driver's seat while Turner was in the passenger seat. Smith concluded her testimony by denying that she had been kidnapped and denying that Turner had ever possessed a gun.

Finally, Turner himself took the stand. Like Smith, he claimed that she had called him over to the apartment to pick her up. He also said that the cause of their altercation was that another woman had called his phone and Smith wanted to see it. Turner said that Smith tried to grab the phone, and "I grabbed her like, like roughly pushed [her]." Turner testified that they then got into the car, with Smith in the driver's seat and him on the passenger side. When Smith tried to get the phone again, he "jerked back like that and hit her." As he explained it, "I hit her. My fist was balled up, but I jerked back and when I did like this, I hit her." Turner maintained that he did not intentionally hit her and that it had been an accident. Turner said that he loved Smith and would never do anything to hurt her. He also pointed out that, "if this woman was in fear of her life of me, she wouldn't be here [testifying] for me."

After the close of evidence, the district court stated that it would reserve its ruling about the admissibility of the hearsay statements of Shana, Shanae, and Smith. But it then asked Turner's counsel if, even without any of the hearsay

6

statements, there was sufficient evidence (based on the police officers' observations, the evidence of her injuries, and the jail telephone call between Turner and Smith) to support a finding that Turner had at least committed battery. Turner's counsel conceded that the evidence before the court was sufficient to find simple battery, and the court ended the hearing without making any formal findings on the issue.

Later, the district court issued an "order finding defendant committed felony battery" in which it concluded, without considering the tape-recorded hearsay statements of Shana, Shanae, or Smith, that the government had presented sufficient evidence to support a finding that Turner committed felony battery. The district court stated that its findings were buttressed by Smith's "false and incredible testimony" as to how she sustained her injuries. Smith could not have been injured in the way that she said — by Turner accidentally hitting her with his left hand while she was in the driver's seat and he in the passenger seat — because the left side of Smith's face was severely injured. In addition, Smith had admitted in the recorded telephone call placed from jail that Turner had hit her with his fist, which contradicted any suggestion that the contact was accidental. The district court found that Turner had also perjured himself. The case proceeded to sentencing.

Prior to sentencing, the probation office prepared a report and recommendation which calculated Turner's guidelines sentence range to be 24 to 30 months imprisonment (due to his Grade A violation for felony battery and criminal history category of IV).  See U.S.S.G. § 7B1.4(a).  Under 18 U.S.C. § 3583(e)(3), however, the maximum term of imprisonment that can be imposed upon revocation of supervised release for his original offense — conspiracy to commit bank robbery — was 24 months.  Thus, because the statutory maximum term of imprisonment was less than the guidelines range, the statutory maximum became the applicable guidelines range under U.S.S.G. § 7B1.4(b)(1).  At the sentence hearing, the government asked for the maximum statutory sentence of 24 months imprisonment.  The court agreed and imposed that sentence, finding that it was appropriate in part because Turner had inflicted serious injuries on Smith and perjured himself.  Turner did not object to the accuracy of the guidelines calculation.  However, he did object to the court's findings that the battery had caused "great bodily harm" and that he had perjured himself.

Turner raises two arguments on appeal.  First, he contends that the government failed to prove that he committed felony battery because there was no evidence that he intentionally struck his victim and no evidence that he caused the victim great bodily harm.  Second, he argues that his sentence is procedurally and substantively unreasonable.

8

II.

A court may revoke a defendant's term of supervised release and impose a term of imprisonment when it finds by a preponderance of the evidence that the defendant violated a condition of that release.  See 18 U.S.C. § 3583(e)(3); United States v. Hofierka, 83 F.3d 357, 363 (11th Cir. 1996).  The district court in this case found that Turner violated the terms of his supervised release by committing felony battery, which is defined in Florida as (1) "[a]ctually and intentionally touch[ing] or strik[ing] another person against the will of the other," and (2) thereby causing that person "great bodily harm, permanent disability, or permanent disfigurement."  Fla. Stat. § 784.041(1).

We review the district court's conclusion that Turner violated the terms of his supervised release for abuse of discretion, United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994), and we are bound by the district court's findings of fact unless they are clearly erroneous, United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).  Credibility determinations are the province of the factfinder and "will almost never be clear error."  United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).

The district court did not clearly err in concluding that Turner intentionally struck Smith and caused her great bodily harm. The court heard testimony from both of the police officers that Smith seemed shaken and traumatized when she spoke to them. In fact, both detectives testified that she did not want to talk to them at first, but that she eventually did because her relatives warned her that she could be hurt worse the next time if she did not do something about it. The court also saw a photograph of Smith's injuries. And as Detective Aguirre testified, the cut on Smith's cheek was so severe that it had to be stitched up. In light of the severity of those injuries, the court reasoned that they must have been inflicted intentionally. Its conclusion was buttressed by the jailhouse phone call between Turner and Smith in which Smith admitted that she had told the police that he had hit her with his fist.[3]

The district court's decision was also bolstered by the adverse credibility findings it made as to both Smith and Turner. Criminal defendants do not have to testify in their own defense, but if a defendant testifies and the factfinder does not believe him, the factfinder may consider his testimony as substantive evidence of his guilt and conclude that the opposite of his testimony is true. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). That is what happened in this case. The district court disbelieved both Turner and Smith because it found that the

---

[3] Although no recording or transcript of that conversation is in the record, the parties do not dispute the district court's characterization of it.

injury could not have happened the way they described it.  The district court did not clearly err in reaching this conclusion and finding that Turner struck Smith intentionally.  See Rodriguez, 398 F.3d at 1296.

Turner contends that Smith's injuries did not constitute "great bodily harm," as required for felony battery, because there was no evidence about how many stitches her wound required or that there would be any permanent scarring.  As Turner concedes, however, the term "great bodily injury" is not a precise one.  And the Florida District Court of Appeal has upheld a conviction for felony battery where the victim suffered a busted lip, loose tooth, and a cut on his hand, which required treatment at an emergency room.  See Gaines v. State, 800 So. 2d 732 (Fla. 5th DCA 2001); see also State v. Williams, 9 So. 3d 658, 659 (Fla. 4th DCA 2009) (injuries sufficient for felony battery where the defendant bit the victim on the arm and shoulder causing lacerations which required emergency medical treatment); T.S. v. State, 965 So. 2d 1288 (Fla. 2d DCA 2007) (imposing conviction for felony battery where defendant punched victim in her right eye, fracturing her eye socket, which required reparative surgery and caused victim to suffer from double vision).  Moreover, whether a victim has suffered great bodily harm is an issue of fact to be resolved by the factfinder, and it will not be disturbed if there is sufficient evidence to sustain it.  Owens v. State, 289 So. 2d 472, 474 (Fla. 2d DCA 1974).

In this case, Detective Aguirre testified that Smith's face was swollen and bruised and that she had a laceration on her left cheek that required stitches. Detective Rott testified that her wound was bleeding badly enough when he arrived that he called for medics. Although Smith did not ride to the hospital in the ambulance, she did go to the hospital to have her injuries treated. And the district court saw a photograph of her face that depicted the extent of her injuries. In light of that evidence, we are not left with a "definite and firm conviction" that the district court erred in concluding that Smith suffered "great bodily harm" as a result of Turner's actions. See United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010) (quotation marks omitted). The district court's revocation of Turner's supervised release was proper.

### III.

Turner next challenges his sentence as procedurally and substantively unreasonable. We review a sentence imposed upon revocation of supervised release for reasonableness, United States v. Sweeting, 437 F.3d 1105, 1106–07 (11th Cir. 2006), applying a deferential abuse of discretion standard, Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007).

To the extent that Turner argues his sentence was contrary to the evidence presented at the revocation hearing, this appears to be an argument that the sentence is procedurally unreasonable because it is based on clearly erroneous

facts.  See id.  As discussed above, however, the district court's findings regarding Turner's commission of a felony battery and perjury are not clearly erroneous, and thus Turner's procedural reasonableness argument fails.

We turn now to his challenge to the substantive reasonableness of the sentence.  A court imposing a sentence for a violation of terms of supervised release should "sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  U.S.S.G. Ch. 7 Pt. A(3)(b).  However, in imposing a sentence for this purpose, a court must still consider the § 3559(a) factors.[4]  See Sweeting, 437 F.3d at 1107.  The party challenging the sentence bears the burden of showing it is unreasonable in light of the record and the § 3553(a) factors.  United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2010).  And we will not reverse the sentence as substantively unreasonable unless the district court "(1) fail[ed] to afford consideration to relevant factors that were due significant weight, (2) [gave] significant weight to an improper or irrelevant factor, or (3) commit[ed] a clear error of judgment in considering the proper factors."

---

[4]  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for deterrence; (3) the need to protect the public; (4) the need to provide the defendant with needed educational or vocational training or medical care; (5) the sentencing guidelines range; (6) pertinent policy statements of the Sentencing Commission; (7) the need to avoid unwanted sentencing disparities; and (8) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).

13

United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted).

Turner has two basic arguments:  (1) that the district court erroneously based its sentence not on Turner's breach of trust but on its "finding of felony battery" and "purported 'perjury and obstruction' at the violation hearing"; and (2) that his 24-month sentence is "greater than necessary to comply with the statutory sentencing goals."  As for the first argument, the district court clearly stated that it was sentencing Turner because he "ha[d] violated the terms and conditions of his supervised release."  The fact that the district court also considered the circumstances of the underlying violation and Turner's conduct at the hearing does not constitute error; courts are entitled to consider "the seriousness of the underlying violation and the criminal history of the violator."  U.S.S.G. Ch. 7 Pt. A(3)(b).  Courts are also entitled, under 18 U.S.C. § 3553(a)(1), to consider the nature and circumstances of a defendant's offense as well as his history and characteristics.  As a result, Turner cannot show that the court's consideration of those facts was improper.

Nor do we agree with Turner that the sentence imposed was greater than necessary to comply with the statutory sentencing factors.  The guidelines range was originally 24 to 30 months imprisonment.  See U.S.S.G. § 7B1.4(a).  But because the maximum term of imprisonment that can be imposed upon revocation

of supervised release for his underlying conviction was 24 months, see 18 U.S.C. § 3583(e)(3), that maximum became the guidelines range, see U.S.S.G. § 7B1.4(b)(1).  In sentencing Turner to 24 months imprisonment, the district court stayed within that revised guidelines range.  We ordinarily expect sentences that are within the guidelines range to be reasonable.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  And Turner has not given us any reason — as distinguished from conclusory assertions — to think that his within-guidelines sentence is unreasonable.  He does not contend that the district court failed to consider relevant factors that were due significant weight.  See Irey, 612 F.3d at 1189.  He has not shown that the district court gave significant weight to an improper or irrelevant factor.  Id.  And he does not argue that the court committed a clear error of judgment in considering the factors.  Id.  Under these circumstances, the district court did not abuse its discretion in imposing a 24-month, within-guidelines sentence.  This is particularly true in light of the violent nature of Turner's violation and his troubled past, which reveal a need both to protect the public from Turner and to provide adequate deterrence.  See 18 U.S.C. § 3553(a)(1), (2)(b)–(c).

**AFFIRMED.**

15