[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17570
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cr-80149-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXANDER ROBERT XAVIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 30, 2018)

Before ED CARNES, Chief Judge, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Alexander Xavier appeals his convictions for mail fraud, 18 U.S.C. § 1341,

major fraud, id. § 1031, and making false statements to a federal agency, id. § 1001. He contends that the district court erred by giving a deliberate ignorance jury instruction.

## I. BACKGROUND

From 2008 to 2010 Xavier received around $400,000 in fees for signing as surety on performance and payment bonds for government construction contracts.[1] With each bond, Xavier also provided an affidavit of individual surety swearing under oath and penalty of prosecution that the assets or funds existed and that they were committed solely in support of the bond. Four contracts, one with the Department of Labor and three with the Department of the Army, are at issue.

### A. Department of Labor Bonds

In 2008 Xavier signed as surety on performance and payment bonds for a construction contract between Angel Menendez Environmental Services and the Department of Labor. Each bond was worth the full contract amount of $5,118,295, and Angel Menendez paid a four percent premium of $204,731.80 on both. In his Affidavit of Individual Surety Xavier pledged "$10,236,950 in cash and/or cash equivalents evidenced by attached irrevocable trust receipt issued by

---

[1] Federal law requires government contractors to obtain surety bonds for contracts over $100,000. 40 U.S.C. § 3131(b). Under a performance bond, a surety agrees to pay for another contractor to complete the work if the original contractor fails to perform, and under a payment bond, a surety agrees to pay the subcontractors if the contractor fails to pay them. See id. In exchange for insuring the project, the surety collects a fee.

2

Guardian One Capital Trust" and swore that "[s]uch assets are held [in an account] at Bank of America" located in Sacramento, California.

Xavier neither deposited nor held in escrow the assets he had pledged. The holder of the Bank of America account, David H. Fredrickson, testified that he had signed an agreement with Xavier to open an escrow account, but the account was never funded, and he had never held $10,236,950 in support of bonds for Angel Menendez or the Department of Labor. The Department of Labor later cancelled the construction contract with Angel Menendez, and the contractor sought a refund on the $409,463.60 in premiums paid to Xavier. Xavier denied the request, stating that he would not issue a refund because the trust had incurred expenses transferring the assets to the Sacramento account.

## B. Department of the Army Bonds

That same year Xavier also signed as individual surety on performance and payment bonds for a construction contract between Better Built Construction Services, Inc. and the Army. Each bond was initially worth $1,000,000. In the Affidavit of Individual Surety Xavier again swore that he had sufficient assets to support the bonds, attached an irrevocable trust receipt issued by Guardian One Capital Trust, and pledged assets held at the Sacramento Bank of America. Xavier also stated in the affidavit that he had been employed at Guardian One Capital Corporation for five years. Frederickson again testified that he had never held

3

assets in a trust account for either Better Built or the Army.

In 2009 the Army continued the contract with Better Built. To cover the increase in work, Better Built sought an increase of $2,832,174 on the performance and payment bonds, and Xavier again signed as individual surety. In the Affidavit of Individual Surety, Xavier swore that there were sufficient assets to support the bonds, attached an irrevocable trust receipt issued by 1st Capital Lending Trust, and pledged assets held at Capital Bank & Trust in Lithonia, Georgia. There was no Capital Bank & Trust in Lithonia, Georgia. Xavier also stated in the affidavit that he had been employed for the last five years at 1st Capital Lending Trust, a different employer than the one he previously listed.

In 2010 the Army continued the contract with Better Built for another year. To cover the increase in work, Better Built sought supplemental performance and payment bonds totaling $231,594.61. Xavier again signed as individual surety, swore that he had sufficient assets to support the bonds, attached an irrevocable trust receipt issued by 1st Capital Lending Trust, and pledged assets held at Regions Bank in Boca Raton, Florida. This time Xavier identified his employer as Quantum Partners, Inc. Xavier's employee, Kelly Spillman, testified that Quantum Partners never had the amount of money that was being pledged by Xavier in the bonds. And the account holder, William H. Batallas, testified that he had never held assets for the benefit of the Army, and his bank records showed that there

4

were no accounts in which $231,594.61 had been deposited.  Batallas also testified that Xavier had not discussed the assets with him even though Batallas worked for Quantum Partners and had an office next to Xavier's.

## C.  Xavier's Testimony

Xavier was the sole witness in his defense.  He testified that others had input the information onto the forms, that he did not know at the time that the statements in the bond documents were false, and that he had merely signed them.  Xavier claimed that when he worked at Guardian One he believed the bonds were backed by assets held by a man named Mel DeRutledge and DeRutledge's business partner because DeRutledge had a multimillion dollar home.  As for the supplemental bonds for Better Built, he testified that Joe, Linda, and Brian Garrahan at Quantum Research had shown him an account statement for their business, which had between $20 and $30 million in assets.  Based on that balance, Xavier believed that the assets existed to support the bonds.  He also testified that he believed the government would verify the information contained within the bonds.

## D. Jury Instructions

After the close of evidence, the court asked for the parties' opinions on the proposed jury instructions, which included an instruction on deliberate ignorance. Xavier objected to the deliberate ignorance instruction, arguing that the

5

government provided no evidence that he avoided knowing that the statements in the documents were false and that giving the instruction would allow the jury to convict on a less-stringent theory of negligence.  The court overruled the objection and asked whether Xavier objected to the instruction's wording.  Xavier responded that he did not, and the court gave this instruction to the jury:

> If a defendant's knowledge of a fact is an essential part of a crime, it's enough that the defendant was aware of a high probability that the fact existed, unless the defendant actually believed the fact did not exist. Deliberate avoidance of positive knowledge, which is the equivalent of knowledge, occurs, for example, if a defendant believes a statement is false but deliberately avoids learning that it is false so he or she can deny knowledge later.

> So you may find that defendant knew a statement was false if you determine beyond a reasonable doubt that the defendant actually knew the statement was false or had every reason to know but deliberately closed his or her eyes.  But I must emphasize that negligence, carelessness or foolishness is not enough to prove that the defendant knew the statement was false.[2]

After deliberation, the jury found Xavier guilty on all counts.  This is his appeal.

## II.  DISCUSSION

We review de novo the legal correctness of jury instructions, but defer to the district court on questions of phrasing absent an abuse of discretion.  United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000).  We will reverse a conviction

---

[2] Except for alterations to the example in the first paragraph, that language tracks the wording of special instruction 8 of this circuit's Pattern Jury Instructions.

based on a jury instruction error only if we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998).

Xavier contends for the first time on appeal that the wording of the instruction was erroneous and that it allowed the jury to convict him on a theory of reckless indifference. Jury instructions that are challenged for the first time on appeal are reviewed for plain error. United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995). We may reverse a conviction under plain-error review if we find that the district court made: (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013).

A defendant acts with deliberate ignorance when he is "aware of a high probability of the existence of the fact in question and purposely contrive[s] to avoid learning all of the facts." United States v. Rivera, 944 F.2d 1563, 1571 (11th Cir. 1991). The district court's instruction stated that to find deliberate ignorance, the jury had to find "beyond a reasonable doubt" that Xavier "had every reason to know" that the statements in the bond documents were false and that Xavier "deliberately closed his [ ] eyes" to that fact. That instruction was not a "plainly incorrect statement of the law." United States v. Prather, 205 F.3d 1265, 1271

7

(11th Cir. 2000).

Xavier argues that the instruction was incorrect because under it, the jury was not required to find that Xavier subjectively believed the statements in the bond documents were false. But the jurors did not have to find that Xavier subjectively believed that the claims were false to conclude that he acted with deliberate ignorance. Instead they needed to find only that Xavier "subjectively believe[d] that there [wa]s a high probability" that the claims were false. Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769, 131 S. Ct. 2060, 2070 (2011); see also Rivera, 944 F.2d at 1571 ("aware of a high probability"). The instruction's language — "had every reason to know" — includes that requirement.

Xavier also argues that the language of the instruction was insufficient because it did not require the jury to find that Xavier took "active steps" to avoid learning whether the statements in the bond documents were true, which allowed the jury to convict on a finding that Xavier was reckless. He relies on the Supreme Court's opinion in Global-Tech, which states that the deliberate ignorance test is satisfied when a defendant takes "deliberate actions to avoid learning of [a] fact." 563 U.S. at 769, 131 S. Ct. at 2070. But Global-Tech does not require the magic words "active steps" in a jury instruction. The district court's instruction required the jury to find beyond a reasonable doubt that Xavier "deliberately closed his [ ]

8

eyes." It explained that a defendant acts with deliberate ignorance when he "deliberately avoids learning that [a statement] is false."[3] And it emphasized that "negligence, carelessness, or foolishness" is not enough for deliberate ignorance, further ensuring that the jury did not convict on a less-stringent standard. The instruction was not a plainly incorrect statement of the law. See Stone, 9 F.3d at 940 ("consciously tried to avoid actual knowledge"); Rivera, 944 F.2d at 1571 ("purposefully contrive[s] to avoid learning").

Xavier next contends that even if the wording of the deliberate ignorance instruction was not plainly incorrect, the district court erred by giving the instruction because it was not justified by the evidence. We need not decide that issue. Any error in giving the deliberate indifference instruction was harmless because "the jury could have convicted on an alternative, sufficiently supported theory of actual knowledge." See United States v. Kennard, 472 F.3d 851, 858 (11th Cir. 2006); Steed, 548 F.3d at 977.[4]

---

[3] Xavier argues that we should not look to the entire instruction, and instead should focus only on one sentence. But in determining the correctness of a jury charge, we do not look to one portion alone but instead determine whether "the charge as a whole is a correct statement of the law." United States v. Perez-Tosta, 36 F.3d 1552, 1564 (11th Cir. 1994); see also United States v. Isnadin, 742 F.3d 1278, 1296 (11th Cir. 2014) ("District courts enjoy broad discretion in formulating jury instructions so long as the charge as a whole accurately reflects the law in the context of a case's facts.").

[4] Xavier argues that the "sufficiently supported" standard of harmless error should not apply because in Kennard the deliberate ignorance instruction was a correct statement of the law and here the instruction was not. See Stone, 9 F.3d at 938–39 ("When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true,

The government showed that Xavier made around $400,000 in a span of a few years by signing his name to pledge millions of dollars in assets that did not exist. He swore that those nonexistent assets were held at banks which had no record of them or at banks which did not exist. And Xavier admitted that certain statements in the bond documents were false, but testified that he did not know they were false when he swore to them. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) (holding that when a defendant testifies in his own defense, the fact-finder may disbelieve his testimony, which may be considered, along with other evidence, as substantive evidence of his guilt). Because the evidence also supports a finding of actual knowledge, the purported error in the district court's instruction was harmless.

**AFFIRMED.**

---

however, when they have been left the option of relying upon a factually inadequate theory . . . ."). But as we have explained, the district court did not err in its deliberate ignorance instruction, and it required that the jury's finding of deliberate ignorance be "beyond a reasonable doubt." See id. at 935 ("[A]ny error in giving [a deliberate ignorance] charge in the absence of sufficient evidence is harmless when the instruction itself requires, as a precondition to its application, proof beyond a reasonable doubt of deliberate ignorance."). If, as Xavier contends, the government did not introduce sufficient evidence of deliberate ignorance then we presume that the jury did not convict on that ground. Id. at 938. That leaves only the alternative ground of actual knowledge and the issue of whether there was sufficient evidence to support a conviction on that ground.

10