[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-13234
Non-Argument Calendar

————————————————

D.C. Docket No. 1:11-cr-20290-PCH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAPHAEL LEVY,

Defendant-Appellant.


————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(March 20, 2013)

Before DUBINA, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Raphael Levy appeals his convictions on five counts of financial instrument fraud, in violation of 18 U.S.C. § 514(a)(1)-(2), arguing that the evidence adduced at his trial did not support the conclusion that he possessed the requisite criminal intent.  Levy took the stand and admitted to having created and issued five fictitious money orders purporting to draw on United States Treasury accounts.  However, as an adherent to the "Redemption Theory," which is premised on the purported bankruptcy of the federal government and elimination of the gold standard in the 1930's, Levy testified that he genuinely believed he was entitled to create money orders drawing on funds held on his behalf by the United States Treasury and, therefore, he did not willfully violate the law.  On appeal, he contends that:  (1) the money orders he created were so "clearly bogus on their face" that he could not possibly have intended to deceive; and (2) because the money orders were issued to pay the debts of others—namely, his girlfriend and her father—he would not have directly benefited from the offenses, even if the money orders were accepted and cashed as authentic.

Where, as here, a defendant moves for judgment of acquittal under Fed.R.Crim.P. 29(a) at the close of the evidence, we review *de novo* the sufficiency of the evidence necessary to support a conviction.  *See United States v. Acosta*, 421 F.3d 1195, 1197 (11th Cir. 2005).  We take the evidence in the light most favorable to the government and resolve any conflicts in its favor.  *United*

2

*States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).  In assessing the sufficiency of the evidence, "the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt."  *Id.* at 1285 (internal quotation marks omitted).  Finally, we assume that the jury made credibility choices in a way that supports the verdict.  *Id.*  Importantly, "a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt."  *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis omitted).

To obtain a conviction under 18 U.S.C. § 514(a), the government must prove three elements:  (1) the defendant did or attempted to draw, print, process, produce, publish, or otherwise make a false or fictitious instrument, document, or other item within the United States; (2) the fictitious instrument, document, or item appeared, represented, purported, or contrived through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States; and (3) the defendant acted with the intent to defraud.  18 U.S.C. § 514(a)(1).  "Intent to defraud has often been defined as the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self."  *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (internal quotation marks omitted).[1]

---

[1] *Klopf* dealt with the "intent to defraud element " under 18 U.S.C. §§ 1028 and 1029,

3

Where Congress focuses on the fraudulent intent of the violator in a criminal statute, the negligence of the victim in failing to discover a fraudulent scheme cannot be a defense to criminal conduct. *See United States v. Svete*, 556 F.3d 1157, 1161-66 (11th Cir. 2009) (*en banc*) (rejecting defendant's argument that conviction for mail fraud under 18 U.S.C. § 1341 required proof of a scheme calculated to deceive a person of ordinary prudence). In other words, "[a] fanciful scheme may nonetheless be a scheme to defraud. *Id.* at 1162. Moreover, a party is no less culpable for a fraudulent scheme if he intends the benefits of the fraud to accrue to third parties. *See United States v. Sorich*, 523 F.3d 702, 709-11 (7th Cir. 2008) (rejecting appellant's argument that a fraudulent scheme to benefit third parties could not support a conviction under honest services mail fraud statute, 18 U.S.C. § 1346).

Here, we conclude from the record that the evidence adduced at trial supported Levy's convictions. The government presented evidence, and Levy himself admitted, that he deliberately created and attempted to pass fictitious instruments under the authority of the United States, leaving only the issue of criminal intent in question. Although he testified that he had acted in good faith and without the intent to defraud, a number of circumstances presented at trial

---

rather than 18 U.S.C. § 514. This Court has not specifically addressed the meaning of "intent to defraud" under § 514, but Levy has provided no reason to suggest that *Klopf*'s definition ought not to apply thereunder. In any event, the district court's charge, to which Levy did not object, was entirely consistent with *Klopf*.

4

pointed to the opposite: (1) he never received a response from the Secretary of Treasury regarding his supposed accounts; (2) none of the money orders he drafted was ever successfully cashed by a payee; (3) he used his girlfriend's address on several blank money orders rather than his prison post office number; (4) he erroneously labeled several blank money orders as "special," privileged mail; (5) he created authentic Treasury investment accounts *after* he was being investigated for fraud; (6) and he admitted to having lied by pleading guilty in his prior convictions.  The jury was free to disbelieve Levy's testimony regarding good faith, particularly in light of this evidence, and to consider his statements as substantive evidence of his intent to defraud.  *Brown*, 53 F.3d at 314.

Levy's two arguments on appeal do not undermine the jury's verdict.  First, he now claims that no reasonable person could have believed the money orders were authentic, yet this is belied by the extremely detailed steps he took to create the instruments at issue, and conflicts with his testimony at trial that he genuinely intended the money orders to be received in payment for various obligations.  Furthermore, for purposes of criminal liability, it is the intent of the offender that matters, not the reasonableness of his efforts.  *See Svete*, 556 F.3d at 1161-66.  Equally unavailing is Levy's second contention that any reasonable inference of intent is barred because he was not the intended beneficiary of the fictitious money orders.  All but one of the money orders at issue related to Patricia Escobar's

condominium, which, according to Levy's testimony at trial, he considered to be his own.  In any event, the intent to defraud does not require a personal benefit. *See Sorich*, 523 F.3d at 709-11.

For the reasons stated above, sufficient evidence was presented at trial from which the jury could conclude beyond a reasonable doubt that Levy possessed the requisite intent to defraud in this case and was therefore guilty of financial instrument fraud under 18 U.S.C. § 514(a).  Accordingly, we affirm his convictions.

**AFFIRMED.**