[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14860
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00272-CG-B-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX ALFREDO RIVAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 15, 2018)


Before MARTIN, BRANCH and BLACK, Circuit Judges.

PER CURIAM:

Felix Alfredo Rivas appeals his conviction for conspiracy to possess with intent to distribute methamphetamine and heroin in violation of 21 U.S.C. § 846, as well as his conviction for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Rivas raises three issues on appeal.  First, he asserts the district court erred by denying his motion to suppress evidence of the methamphetamine found in his truck, which he contends was obtained through an unconstitutional search.  Second, he challenges the sufficiency of the evidence supporting his conviction for conspiracy.  Third, he contends the district court erred both by allowing the government to join the methamphetamine and heroin allegations into a single count of conspiracy and by denying his motion to sever the charges.  After review, we affirm.

## I.  DISCUSSION

*A. Suppression*[1]

Rivas first asserts the district court erred by denying his motion to suppress evidence of the methamphetamine found hidden in his truck's gas tank.  He contends the methamphetamine was discovered through a search that was unconstitutional both because there was no probable cause to pull him over and

---

[1] We review a district court's denial of a motion to suppress evidence under a mixed standard of review.  *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 698 (2017).  We review the district court's findings of fact for clear error and its application of law de novo.  *Id.*

2

because the officer unnecessarily extended the duration of the stop to allow a drug dog to perform a search.

With respect to whether the officer had probable cause to pull Rivas over, the district court credited the officer's testimony that he observed Rivas breaching the fog line of his driving lane eight times.  The district court also found that the officer's testimony was consistent with footage from his dashboard camera.  The officer concluded Rivas's repeated failure to stay within his lane was a violation of § 32-5A-88 of the Alabama Code, which states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  Ala. Code § 32-5A-88(1).

We agree with the district court that it is unnecessary to determine whether Rivas violated the statute, because the officer's conclusion that Rivas violated § 32-5A-88(1) by repeatedly breaching the fog line—in the absence of settled authority on the issue—was objectively reasonable.  Accordingly, even if the officer were incorrect in his interpretation of the statute, the initial traffic stop did not violate the Fourth Amendment.  *See Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014) (holding that a stop based on an objectively reasonable mistake of law is not "unreasonable" under the Fourth Amendment).

3

On the issue of whether the stop was prolonged in violation of the Fourth Amendment, the district court found the encounter was reasonably extended, based both on the officer's need to converse with Rivas through a language translator and the delay accompanying a database search of Rivas's identification.  The district court did not clearly err in that conclusion.

Rivas argues that "when the officer began to inquire into other areas unrelated to the stop, it became an unconstitutional detention."  Br. of Appellant at 24.  That argument—standing alone—is contradicted by the same authority Rivas cites for support.  *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (explaining that, barring reasonable suspicion justifying additional investigation, unrelated inquiries are permissible during a traffic stop as long as they do not measurably extend the encounter beyond the time reasonably required to complete the traffic stop's initial purpose).  The inquiry is not whether the officer asked questions unrelated to traffic safety, it is whether—without additional reasonable suspicion—any unrelated questioning unreasonably delayed the encounter.

Rivas has not demonstrated it was unnecessary for the officer to converse with him through a translation program in order to obtain routine information related to the traffic stop.  Nor has he demonstrated that conducting the database search was inconsistent with the traffic-safety purpose of the stop.  Moreover, the officer articulated other reasons why he suspected Rivas was involved in criminal

activity, based on his post-stop observations.  Specifically, the officer testified: (1) Rivas was abnormally nervous, such that his hands were shaking; (2) Rivas was traveling between a known drug-trafficking source and a known distribution hub; (3) Rivas's key ring had only two keys (both of which were to the truck's ignition); (4) Rivas had an unusually small amount of luggage for someone traveling from Texas; (5) Rivas's answers to the officer's questions were evasive and inconsistent; (6) Rivas's body language indicated evasiveness; and (7) Rivas's physiological response to the circumstances (controlled breathing and carotid artery pulsation) was suspicious. Rivas fails to demonstrate why the officer's post-stop observations did not provide reasonable suspicion to, at a minimum, ask Rivas additional questions and obtain results from his database search.

Both the officer's conversation with Rivas and the results of the database search were pending while the dog performed his sweep around Rivas's truck. And once the database returned information suggesting Rivas was suspected of involvement in human trafficking, which occurred simultaneously with the dog indicating the presence of narcotics in Rivas's truck, there is no question the officer had reasonable suspicion to extend the encounter for a more thorough investigation.  Thus, the district court did not err by determining the duration of the stop complied with the Fourth Amendment.

## B. *Sufficiency of the Evidence*[2]

Rivas next challenges the sufficiency of the evidence supporting his conspiracy conviction. Specifically, he contends there was no evidence to convict him of conspiracy regarding the methamphetamine, because there were no other conspirators charged, and he could have acted alone. He further contends the evidence linking him to the heroin smuggling—his purchasing insurance for a truck subsequently used to traffic the heroin—was too flimsy to sustain his conviction.

As an initial matter, Rivas chose to testify in his own defense. In doing so, he ran the risk that the jury would believe the opposite of his testimony and use it as substantive evidence against him. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt."). Based solely on Rivas's testimony, the jury was free to conclude: (1) Rivas knew he was purchasing insurance for a truck that would be used by someone else to transport

---

[2] Ordinarily, we review a challenge to the sufficiency of the evidence de novo to determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008). But because Rivas did not renew his motion for a judgment of acquittal at the end of the evidence, we review his challenge only to determine whether there has been a manifest miscarriage of justice. *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006). Under that standard, we must affirm unless "the evidence on a key element of the offense is so tenuous that conviction would be shocking," viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences and credibility determinations that support the verdict. *Id.* (quotation omitted).

heroin to the United States; (2) he participated in bringing heroin to the United States; (3) the methamphetamine was placed in the gas tank after he purchased the truck; (4) he was referring to methamphetamine when he told his mother he "had to take some things to Atlanta to make a few extra dollars"; and (5) a drug-trafficking organization arranged to purchase his truck for him. When combined with other corroborating evidence of Rivas's participation in the heroin and methamphetamine trafficking, the evidence was sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Rivas was guilty of conspiring with others to possess with intent to distribute heroin and methamphetamine. *See Brown*, 53 F.3d at 314.

Even without Rivas's testimony, the jury was presented with compelling circumstantial evidence of Rivas's participation in a drug-trafficking organization. For example, Rivas was found with a distribution amount of methamphetamine concealed in a gas tank, which the jury was informed is consistent with the practices of sophisticated drug-trafficking organizations. The jury also learned that the truck in which the methamphetamine was found was purchased by a third party who forged Rivas's name and signature on the purchase documents. Evidence also showed Rivas purchased insurance for a truck that did not belong to him, which was found with more than half a million dollars' worth of heroin at a border crossing Rivas then crossed three days later. Testimony also established it was not

uncommon for drug-trafficking organizations to purchase insurance for their vehicles through someone other than the driver. The jury further learned that a third party paid for Rivas's trip to Illinois to purchase the insurance in question, which was consistent with the practices of drug-trafficking organizations.

In addition, the jury was presented with a transcript of a recorded phone call in which Rivas's girlfriend explained that a person named Juan told her (in apparent reference to Rivas's situation), "[I]t wasn't our fault, it was his fault." And finally, suspicious deposits were made into Rivas's bank accounts, which a Government witness testified was consistent with someone being paid by a drug-trafficking organization.

At the very least, the evidence of Rivas's participation in a conspiracy with one or more other persons was not so tenuous as to render his conviction a manifest miscarriage of justice. We therefore reject Rivas's sufficiency challenge. *See United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006) (explaining that our sufficiency review is more limited where, as here, a motion for a judgment of acquittal was not renewed after the conclusion of the evidence).

8

*C. Joinder and Severance*[3]

Rivas's arguments on appeal concern only whether the conspiracy charges were properly joined under Federal Criminal Rule 8(a).[4]  We have explained that Rule 8(a) is "construed broadly in favor of initial joinder, allowing joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions."  *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002) (quoting Fed. R. Crim. P. 8(a)).  The term "similar," as used in Rule 8(a), means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness."  *Id.* (alteration in original) (quoting *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993)).  Whether charges may be joined under this standard is determined solely

---

[3] We review de novo "whether counts were properly joined in one indictment under Federal Rule of Criminal Procedure 8(a)."  *United States v. Barsoum*, 763 F.3d 1321, 1336 (11th Cir. 2014).  The denial of a motion to sever under Federal Rule of Criminal Procedure 14 is reviewed for abuse of discretion.

[4] By failing to develop any arguments concerning severance under Rule 14, Rivas has abandoned any challenge to the district court's denial of his motion to sever brought under that rule.  *See United States v. Woods*, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012); *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).  But even if Rivas had presented an argument under Rule 14, he could not demonstrate "he received an unfair trial and suffered compelling prejudice."  *Barsoum*, 763 F.3d at 1337 (quotation omitted).  As we have explained, this burden is a heavy one, and it cannot be carried by mere conclusory allegations.  *Id.*  Rivas offers nothing more than speculation as to how the jury may have been influenced by the inclusion of evidence concerning both the heroin and methamphetamine trafficking.  Moreover, the district court instructed the jury to consider the heroin and methamphetamine offenses separately, and the jury demonstrated it did just that by finding Rivas not guilty of heroin possession.  Thus, there is nothing to suggest Rivas received an unfair trial or suffered compelling prejudice as a result of the heroin and methamphetamine charges being tried together.

9

by looking at the allegations stated on the face of the indictment. *United States v. Barsoum*, 763 F.3d 1321, 1337 (11th Cir. 2014).

In this case, the indictment's heroin and methamphetamine charges are of a similar character—both allege Rivas's involvement in drug trafficking. Rivas nevertheless objects that the facts underlying the heroin charges are different from the facts underlying the methamphetamine charges with respect to time, geography, and participants. Even if that were true, it would not affect our analysis under Rule 8. The determination of whether joinder is proper depends solely on the allegations in the indictment; it does not depend on the facts eventually proved at trial.

Here, the second superseding indictment does not distinguish the methamphetamine and heroin charges on the basis of geography or participants. And to the extent the indictment alleges the heroin charges stemmed from an incident that occurred less than a week before the incident involving the methamphetamine, Rivas offers no explanation as to why that distinction would render the heroin and methamphetamine charges dissimilar in character. We therefore conclude that joinder of the charges alleging Rivas's participation in heroin and methamphetamine trafficking was proper under Rule 8.

## II.  CONCLUSION

The district court did not err in denying Rivas's motion to suppress.  Nor did it err in allowing joiner of the heroin and methamphetamine charges.  In addition, the evidence supporting Rivas's conspiracy conviction was not so tenuous as to result in a manifest miscarriage of justice.  We therefore affirm Rivas's convictions.

**AFFIRMED**.